## Heidorn Appeal.

Argued October 7, 1963. Before BELL, C. J., MUSMANNO, JONES, COHEN, EAGEN, O'BRIEN and ROBERTS, JJ.

*Roger W. Hager,* for appellant.

No argument was made nor brief submitted for appellee.

OPINION BY MR. JUSTICE MUSMANNO, November 27, 1963:

On November 6, 1953, Herman Heidorn and Edna Mae Heidorn, his wife, purchased in Stonycreek Township, Cambria County, a one story frame house which sat back 25 feet from Coldren Street on which it fronted. The dwelling was ornamented with an ugly, gabled wooden projection above the outer doorway, intended presumably to protect visitors from the rain as they knocked at the door for admittance. Beneath their feet the visitors stood on another ungainly projection (this one of stone) called a stoop. The lower contrivance measured 6 to 7 feet in width and extended forward toward Coldren Street 4 or 5 feet. The dimensions of the miniature roof extended a little beyond the measurements of the stoop below, for a good reason. Otherwise, the visitor would receive not only the rain from the skies but the water collecting and falling from the overhanging wooden gargoyle.

For reasons which are unexplained, this porch roof has been referred to in this case by witnesses and lawyers as a "stoop", so that, if this terminology were to be accepted as correct, the house was equipped in 1953 with two stoops. Webster's Dictionary defines a stoop as "a raised platform at the entrance of a house with steps and, usually, seats; hence, any small porch at the entrance of a house."

The overhead eyesore has, therefore, incorrectly been called a "stoop". For purposes of clarity, it will be called hence forth an overhang.

On March 11, 1958, Stonycreek Township enacted an ordinance (which was re-enacted on April 28, 1959), providing that the building line of all dwellings would be 25 feet from the street. In July, 1959, the Heidorns had their house covered with aluminum siding. In this operation the overhang and the underfoot stoop were removed and replaced by an 18-foot-wide aluminum awning, extending 10½ feet forwardly away from the house. The stoop was replaced by a concrete slab of a size slightly smaller than the overhead aluminum awning so that drippings from the awning would fall on the ground and not on the concrete and people standing thereon. The awning was supported by four slender ornamental wrought iron posts.

Shortly after these improvements were made, the township informed the Heidorns that their awning and slab encroached on setback territory. The Heidorns at once applied to the zoning board of adjustment for a variance, which was refused. They then petitioned the Court of Common Pleas of Cambria County for a variance, submitting that the original overhang and stoop were a nonconformance of the zoning ordinance which had been enacted prior to the purchase of the house by the Heidorns, and that the installation of the awning and platform did not produce such a substantial change in status that the householders lost the privilege of a nonconforming use.

The court took additional testimony and granted the variance. The board filed exceptions and the court, in considering the exceptions, concluded that the applicants were not entitled to a variance but that they could legally retain the improvements described, because they amounted to a reasonable extension of a nonconformance. Did the court of common pleas abuse its discretion or ignore law, in reaching the conclusion stated?[1] We cannot say that it did.

---

[1] *Archbishop O'Hara's Appeal*, 389 Pa. 35, 50.

It developed in the proceedings below that there had been in existence, even when the house was originally constructed (in 1950) an ordinance which imposed a setback requirement of 25 feet. The Township, therefore, argues that the Heidorns were not entitled to the privilege of a nonconforming use, but the court held, and properly so, that since the township had allowed approximately 10 years to pass without objecting to the ordinance violation, it was guilty of laches and could not now sustain a violation on the basis of the original ordinance of 1942.[2] While courts are reluctant, and should be, to impose the sanction of laches on governmental divisions, equity cannot close its eyes to the sloth, indifference or official neglect of a municipal body any more than it can to the neglect of an individual where such neglect harms an innocent person.

There is nothing in the record to excuse the township's indifference to the presence of the overhang and stoop in front of the Heidorn house. It cannot be said that these objects were concealed from public view. The overhang stuck out like the proverbial sore thumb, and the stoop stuck out like the stoop it was for the world to see and stumble over.

The township argues that there is a difference between the original wooden overhang and the present aluminum awning. The overhang was attached to the house by diagonal braces and thus was suspended in midair, as it were, and therefore, the township argues, it was not part of the building line and accordingly did not violate the setback restriction. The awning to

---

[2] "Laches however may be imputed to a municipality that has stood by and permitted large expenditures to be made upon the faith of an irregular order of court, or of municipal consent informally or tacitly given, where formal consent would have been effective." (*Pgh. v. P. & L. E.*, 263 Pa. 294). *Stahl v. First Pennsylvania Banking and Trust Company*, 411 Pa. 121.

the contrary, the township points out, is supported by posts anchored in the platform beneath, and therefore the ensemble constitutes a moving forward of the building line into the prohibited setback No-Man's Land. This argument crumbles at the slightest touch of the pointer of reason. The township could not possibly argue that if the Heidorns had built an additional room or two, latitudinously extending from the roof and supported by diagonal braces that this would not constitute an encroachment on the setback limitation.

The original homely overhang was there for the world to see and frown upon and if it did not offend the esthetic senses of the township for some ten years, the present attractive awning and platform should not. The aluminum porch which now graces the front of the Heidorn home improves its appearance considerably and in no way impedes enjoyment by others of their property. There is not the slightest suggestion that the patio effect of the front of the Heidorn home is detrimental to the welfare, safety and health of the community. The lower court, with acute perceptiveness, legal appreciation, and practical wisdom, said: "While there is an enlargement of the stoop into what might be called a patio, this enlargement only encroaches an additional $5\frac{1}{2}$ feet into the setback line, and from the testimony and exhibits (pictures before and after the construction) it cannot be said that this is such a change in the nonconformance that it is not a reasonable extension. The appellants have merely done what any logical person would do, and that is they have attempted to beautify the front of their property and house by the planting of a nice lawn and shrubbery, and thereafter by covering the entire house with aluminum siding and removing at the same time this stoop which would then be an eyesore, and replacing it with a canopy and cement slab more in keeping with the architectural style of the building, thus resulting

in a change in the esthetic nature of the neighborhood and the use of the property."

No citizen of the township has objected to what the Heidorns have done. Some 75 houseowners in the immediate vicinage signed a petition urging retention of the patio.

The township stands not on a logical platform but on a dialectical stoop to argue its case. It says that if the Heidorns are permitted to retain their patios then every "property owner in the Commonwealth of Pennsylvania" is entitled to have a front porch and that therefore building setback lines will become a "nullity." This is like worrying that the oceans will some day go dry. The law, while concerned about the future, focuses its attention on the immediate problem at hand and cannot allow an injustice to occur on the theory that a certain decision will become a ghost to haunt posterity.[3] It cannot be influenced by the argument that if a certain privilege is allowed a hunchback, the whole world will become humpbacked.

The short answer to the appellant's thesis in this field is that if our decision becomes a precedent to allow other exceptions to setback requirements, so let it be. When another case comes along to duplicate the history and circumstances of this case, the decision should be, and must be, the same, namely, that the householders will be entitled to a *reasonable* extension of a nonconforming use.

Affirmed.

Mr. Justice BENJAMIN R. JONES, Mr. Justice COHEN and Mr. Justice EAGEN dissent.

---

[3] The Township cites *Fagan v. Zoning Board of Adjustment*, 389 Pa. 99, and *Yocum Zoning Case*, 393 Pa. 148, in support of its position. We have examined these cases and find them inapplicable as to facts and appertaining law.