Carol Elizabeth Campbell, Appellant, *v.* Zoning Hearing Board of Plymouth Township, Appellee.

Humble Oil & Refining Co., Appellant, *v.* Zoning Hearing Board of Plymouth Township, Appellee.

Argued June 5, 1973, before President Judge Bow-MAN and Judges CRUMLISH, JR., KRAMER, WILKINSON, JR., MENCER, ROGERS and BLATT.

*Morris Gerber*, with him *Gerber, Davenport & Wilenzik*, for appellants.

*Stephen C. Yusem*, for appellee.

OPINION BY JUDGE MENCER, October 2, 1973:

These are appeals from an order of the Court of Common Pleas of Montgomery County affirming the decision of the Zoning Hearing Board of Plymouth Township (Board) denying Carol Elizabeth Campbell and Humble Oil and Refining Company (Humble) a variance and also denying Humble's request for a declaration that the zoning classification applicable to the property in question here is invalid. We affirm.

It is well settled that where, as here, the lower court does not take additional testimony on appeal from the zoning board, but rather relies entirely on the record compiled before the board, the scope of our review is limited to a determination of whether or not the board committed an abuse of discretion or an error of law. *Filanowski v. Zoning Board of Adjustment,* 439 Pa. 360, 266 A. 2d 670 (1970); *Pyzdrowski v. Pittsburgh Board of Adjustment,* 437 Pa. 481, 263 A. 2d 426 (1970); *Szmigiel v. Zoning Board of Adjustment,* 6 Pa. Commonwealth Ct. 632, 298 A. 2d 629 (1972).

Humble conditionally leased a tract of land, containing 36,349 square feet, presently occupied by Campbell's Oasis Bar and Restaurant and Oasis Motel, for the purpose of replacing the present enterprises with a gasoline service station. This property is located on the east side of Germantown Pike, adjacent to and north of the Norristown exit of the Pennsylvania Turnpike, and is owned by Carol Elizabeth Campbell, a widow, and members of her family.

The property has been zoned Shopping Center since 1960. Under the Plymouth Township Zoning Ordinance a gasoline filling station is a permitted use when authorized as a special exception only in districts zoned Commercial, and such use is not permitted in a district zoned as a shopping center. However, under the present zoning classification, the property can be used for

many purposes, including: retail store, showroom, restaurant, cafe, soda fountain, dairy bar, snack bar, cafeteria, coffee shop, cocktail lounge, office, studio, beauty parlor, barbershop, investment office, travel agency, ticket office, self-service laundry, millinery shop, bowling alley, indoor recreational establishment, child day center, bakery, financial institution, municipal use, passenger bus station, taxicab stand, electric substation, telephone and telegraph office, post office, repair, upholstering, electrical repair, radio and tv repair, tailoring, stamp redemption center, motel, high rise apartment building, hotel, recreational facilities, office building, and tire, battery and accessory store.

Section 912 of the Pennsylvania Municipalities Planning Code, Act of July 31, 1968, P. L. 805, 53 P.S. §10912 (MPC), enumerates the findings necessary for the grant of a variance:

"The board shall hear requests for variances where it is alleged that the provisions of the zoning ordinance inflict unnecessary hardship upon the applicant. Subject to the provisions of section 801 [53 P.S. §10801], the board may by rule prescribe the form of application and may require preliminary application to the zoning officer. The board may grant a variance provided the following findings are made where relevant in a given case:

"(1) That there are unique physical circumstances or conditions, including irregularity, narrowness, or shallowness of lot size or shape, or exceptional topographical or other physical conditions peculiar to the particular property, and that the unnecessary hardship is due to such conditions, and not the circumstances or conditions generally created by the provisions of the zoning ordinance in the neighborhood or district in which the property is located;

"(2) That because of such physical circumstances or conditions, there is no possibility that the property

can be developed in strict conformity with the provisions of the zoning ordinance and that the authorization of a variance is therefore necessary to enable the reasonable use of the property;

"(3) That such unnecessary hardship has not been created by the appellant;

"(4) That the variance, if authorized, will not alter the essential character of the neighborhood, or district in which the property is located, nor substantially or permanently impair the appropriate use or development of adjacent property, nor be detrimental to the public welfare; and

"(5) That the variance, if authorized, will represent the minimum variance that will afford relief and will represent the least modification possible of the regulation in issue.

"In granting any variance, the board may attach such reasonable conditions and safeguards as it may deem necessary to implement the purposes of this act and the zoning ordinance."

Section 912 of the MPC is a codification of the law in regard to granting variance. The oft cited case of *O'Neill v. Zoning Board of Adjustment*, 434 Pa. 331, 254 A. 2d 12 (1969), provided the guidelines which govern the disposition of a variance case: "In considering the merits of this appeal, we bear in mind the following principles which govern the disposition of variance cases: first, since the court below took no additional testimony, our scope of review is limited to determining whether the Zoning Board of Adjustment clearly abused its discretion in granting the variance or committed an error of law; second, variances should be granted only sparingly and only under exceptional circumstances; third, in order to obtain a variance, the petitioner must prove (1) that the variance will not be contrary to the public interest and (2) that unneces-

sary hardship will result if the variance is not granted; fourth, a variance will not be granted solely because the petitioner will suffer an economic hardship if he does not receive one. Especially is a variance not to be granted when the petitioner purchased the property with the knowledge of the existing zoning regulation or when he should have been aware of the zoning regulation." 434 Pa. at 334-35, 254 A. 2d at 14. (Footnotes omitted.)

Applying the aforementioned principles to the instant case, we find that the lower court did not err in denying Humble's application for a variance. The record not only indicates that Humble has failed to establish the unnecessary hardship which would justify a variance but also fails to demonstrate that the land in question cannot be used within the permissible uses listed under the present zoning classification.[1] *Marple Township Appeal*, 430 Pa. 113, 243 A. 2d 357 (1968); *Jackson v. York City Zoning Board*, 5 Pa. Commonwealth Ct. 271, 290 A. 2d 438 (1972). Here, Humble clearly entered this transaction with the knowledge that the proposed use of the property for a gasoline filling station was violative of the existing zoning laws. Self-inflicted economic hardship is not a justification for the grant of a variance. *Clifton Heights Appeal*, 440 Pa. 101, 270 A. 2d 400 (1970). Nor can economic hardship, resulting from the fact that use of the land as zoned would not be as profitable as using the land for another purpose under a variance, justify the grant

---

[1] Humble's evidence primarily consisted of four witnesses who testified as to the method and operation of the proposed service station, the conditions of the lease, and traffic conditions in the area of the property, and a city planning consultant who had made a study of the property and concluded that a service station would be an appropriate use. Humble also introduced a report of the Planning Agency of Plymouth Township which recommended, in 1971, a zoning change from Shopping Center to Commercial.

of a variance. *Bilotta v. Haverford Township Zoning Board of Adjustment*, 440 Pa. 105, 270 A. 2d 619 (1970) ; *Drop v. Board of Adjustment*, 6 Pa. Commonwealth Ct. 64, 293 A. 2d 144 (1972). This record does not disclose any evidence that the property cannot be profitably used in some manner which does not violate the zoning ordinance. The fact that it will not be financially feasible to continue to use the property as a restaurant and motel is not determinative of the matter. *O'Neill v. Zoning Board of Adjustment, supra.*

Humble also contends that the 1960 amendment of the Plymouth Township Zoning Ordinance changing an area zoning classification from Commercial to Shopping Center was invalid as an unreasonable interference with the use of private property and an abuse of the police power. The burden of proof in an attack on the validity of a zoning ordinance is upon the one asserting invalidity and that burden is a heavy one. *Atria, Inc. v. Mount Lebanon Township Board of Adjustment*, 438 Pa. 317, 264 A. 2d 609 (1970) ; *Mobil Oil Corporation v. Zoning Board of Adjustment*, 5 Pa. Commonwealth Ct. 535, 291 A. 2d 541 (1972). Such a challenge to a zoning ordinance must overcome the presumption of validity. *National Land and Investment Company v. Easttown Township Board of Adjustment*, 419 Pa. 504, 215 A. 2d 597 (1965).

Zoning classifications and the fixing of lines of demarcation are largely within the judgment of the proper legislative body, and the exercise of that judgment will not be interfered with by the courts except in cases where it is obvious that the classification has no relation to public health, safety, morals, or general welfare. *DiSanto v. Zoning Board of Adjustment*, 410 Pa. 331, 189 A. 2d 135 (1963).

We have read the record carefully and conclude that Humble has not met its burden here nor has it

overcome the presumption that the ordinance is valid. *See Upper Darby Township Appeal,* 413 Pa. 583, 198 A. 2d 538 (1964).

Order affirmed.

Judge BLATT concurs in the result.

---

DISSENTING OPINION BY JUDGE WILKINSON:

I must respectfully dissent. I agree entirely with the opinion of the Board, of the court below, and of the majority in the treatment of the question of a variance. If the zoning restrictions were constitutional, there would not be any basis for a variance. However, the Board expressly did not consider itself empowered to rule on the constitutionality of this part of the zoning ordinance. The court below, while at the beginning of its opinion stating that the constitutionality question was raised, did not consider it.

Further, I agree with the law on the constitutionality question as set forth in the majority opinion: i.e., the burden of proof in an attack on the constitutionality of an ordinance is upon the appellants, and the burden is a heavy one; the appellants must overcome the presumption of validity; and the discretionary judgment of the legislative body with regard to zoning classifications will not be interfered with except in cases where it is obvious that the classification has no relationship to the public health, safety, morals, or general welfare. Where I disagree is that I feel this is one of those instances where to me it is obvious that the classification has no relationship to the public health, safety, morals, or general welfare. In my opinion, the appellants have carried their burden of proof and have overcome the presumption.

The findings of fact acknowledged that the tract of land consists of 36,349 square feet (less than one acre), and is bounded on the west by 201.8 feet of highway,

and on the south, east and north by lands of the Pennsylvania Turnpike Commission. Therefore, in spite of the fact that it is zoned Shopping Center, it cannot meet the minimum dimensions for a shopping center development of 300 feet on a public street and 10-acre lot size. Under such circumstances, it would seem that the constitutionality of the ordinance must turn on the justification, under the police power, of the specific restriction prohibiting a service station.

The court below properly stated that the appellants introduced a report of the Planning Agency of Plymouth Township which recommended a zoning change from Shopping Center to Commercial. Further, the court properly summarized the testimony of the four witnesses offered by the appellants. One was an engineer for the oil company who explained the method and operation of the proposed station, the size and color of the proposed buildings, etc. The second witness was a real estate representative who testified that the subject tract was particularly well-suited for use as a service station. The third witness was a traffic engineer who testified that establishing a service station at the site would not only not create a traffic hazard, but, in fact, might be a benefit to the flow of traffic. Appellants' final witness was a city planning consultant who confirmed the testimony of the preceding two witnesses.

No witness testified to contradict or in any way throw doubt on the validity of the appellant's testimony. Four citizens were present who responded to the Chairman's question: "Is there anyone here who wishes to testify for or against, and to ask questions of the witnesses?" These citizens were not sworn as witnesses and, in fact, made statements of conclusions that could not be considered as testimony even if given under oath. One asked a question as to whether a large sign would be prohibited, and the response was that it would be.

The next merely stated that the Planning Commission had turned down this request, and that he recommended the Board disregard this appeal and "leave them take it to court." The next inquired concerning the hours of the proposed operation of the service station and observed that the application stemmed from a desire of the oil company to compete with other oil companies in the area. He concluded his remarks by saying that this area is already known as "gasoline alley, remember that."

Remarkably, the final citizen's statement seems more to support the appellant's case than to oppose it.

"As I said here, I know this has been a long evening, and I'll make this short. I've been active against gas stations in the past, and as I sit here I agree in part with the opinions that have been expressed by the residents of Plymouth Township, and with the comments that you made before, *but I can't help but think, as I look on that drawing, how much I prefer that picture there to the current picture of the motel-restaurant as it exists nowadays.*

"This is the only point I would like to make. We can talk about Gasoline Alley, but let's get down to the realities of life here. I know what's there now, but I would like to know what's going on there one year, two years or five years from now." (Emphasis supplied.)

Prior to 1960, this plot was zoned C-Commercial, permitting service stations. In 1960, the zoning was changed to Shopping Center District, prohibiting service stations. In 1964, the zoning ordinance was changed to permit one service station in a shopping center district. In 1968, the zoning ordinance was amended to omit gasoline service stations as a permitted use in shopping center districts. During all this time, the land across the road continued to be zoned C-Commercial.

In no sense could the granting of this application be construed as "spot zoning." Indeed, to prohibit its use as a service station when it is practically surrounded by service stations (one 41 feet to the north, one 150 feet to the northwest, one 500 feet south, and one 500 feet north) would seem to be spot zoning in reverse!

Since there is an abundance of testimony that a service station here would not adversely affect the public health, safety, morals, or general welfare and not a shred of testimony that it would, and since the tract is not large enough for a shopping center district, I would declare the zoning ordinance that prohibits a service station on this lot unconstitutional in this respect as an improper use of the police power. *National Land and Investment Company v. Easttown Township Board of Adjustment*, 419 Pa. 504, 215 A. 2d 597 (1965).