13 Pa. Commonwealth Ct. 303 (1974)
David Dewald, Jr. and Helen Dewald, Appellants,
v.
Board of Adjustment, City of Pittsburgh, Appellee.
No. 1417 C.D. 1973.
Commonwealth Court of Pennsylvania.
Argued May 9, 1974.
June 12, 1974.
*304 Argued May 9, 1974, before Judges CRUMLISH, JR., WILKINSON, JR. and BLATT, sitting as a panel of three.
David W. Craig, with him Robert N. Hackett and Baskin, Boreman, Wilner, Sachs, Gondelman & Craig, for appellants.
D.R. Pellegrini, Assistant City Solicitor, with him Ralph Lynch, Jr., City Solicitor, for appellee.
OPINION BY JUDGE WILKINSON, June 12, 1974:
The issue in this zoning case is whether the appellants, owners of property in a wooded section of Pittsburgh, are entitled to a variance to operate a trailer park. Appellants' property is located in two zoning districts. Part of the property is within an "S"  Special District in which trailer parks are allowed as a conditional use. The testimony shows that appellants filed for a conditional use, but later withdrew the application. The other part of the property is within an "R 1" Residential District in which trailer parks are not permitted.
In 1961, appellants applied for and received eight building permits for house trailers to be placed on individual lots in the R-1 District. Appellants at this time *305 also applied for and received from the City of Pittsburgh two sewer accessibility permits for the eight house trailers. In 1966, appellants received two health certificates from the Allegheny County Health Department for the operation of "trailer & trailer courts 17" and of "trailer & trailer courts 5." In 1967, the county health certificate gave approval of "trailer & trailer courts 25." In 1968, the certificate stated "trailer & trailer courts 29." During this entire period, appellants spent approximately $31,000 for water, sewage, and electric facilities and for the paving of streets and sidewalks.
On February 15, 1968, the City of Pittsburgh directed appellants to remove all trailers until permits were obtained for their use.[1] Applications for the necessary permits were made and refused. Appellants applied for a variance to operate a trailer park. A hearing of the Zoning Board of Adjustment was held and on January 9, 1970, the Board ruled that "the continuation of existing trailer park is detrimental to adjacent properties and that it would not be an undue hardship on the appellant to be denied same."
Without hearing additional evidence, the lower court dismissed the appeal. This appeal followed.
In this application for a variance, where the court below took no additional testimony, review by this Court is limited to a determination of whether the Zoning Board committed an abuse of discretion or an error of law. Filanowski v. Zoning Board of Adjustment, 439 Pa. 360, 266 A. 2d 670 (1970); Campbell v. Zoning Hearing Board of Plymouth Township, 10 Pa. Commonwealth Ct. 251, 310 A. 2d 444 (1973).
Although Section 2903-2 of the Pittsburgh Zoning Ordinance lists eight (8) criteria which must be met *306 for the granting of a variance, essentially all of the criteria come within the two prerequisites under Pennsylvania law for the granting of a variance. The prerequisites are (1) proof that an unnecessary hardship unique or peculiar to the property exists, and (2) proof that the variance would not be contrary to the public health, safety and general welfare. Rees v. Zoning Hearing Board of Indiana Township, 11 Pa. Commonwealth Ct. 461, 315 A. 2d 317 (1974). A review of the record reveals that we cannot hold that the Board committed an abuse of discretion or error of law when it concluded that appellants had failed to satisfy these requirements.
Essentially, two arguments for the granting of a variance are raised by eminent counsel for the appellants. First, the inaction of the municipality in the years before February 15, 1968, constitutes official acquiescence in the operation of a trailer park. Therefore, a variance is warranted under the principles of Sheedy v. Zoning Board of Adjustment, 409 Pa. 655, 187 A. 2d 907 (1963). Second, the municipality is guilty of laches under the principles of Heidorn Appeal, 412 Pa. 570, 195 A. 2d 349 (1963).
Initially, we must note that appellants received in 1961 building permits for eight individual house trailers; these permits, however, constituted zoning approval[2] for eight trailers only and not, as appellants argue, zoning approval for a trailer park. During the next five years, appellants, without applying for individual permits, increased the number of house trailers from *307 eight to at least seventeen (the County Health Department's certificate indicating at least 17 trailers in 1966). During the next two years, the number of house trailers increased to 29 and after an inspection of the premises on October 23, 1969, the Zoning Board of Adjustment noted 35 house trailers. Furthermore, and certainly to appellants' credit, the sum of $31,000 was spent by appellants to improve the facilities for the trailers on appellants' property. All of these facts indicate that the appellants, sometime after 1961,[3] decided to place additional house trailers on their property without the permission of the municipality. The appellants apparently hoped to create a trailer park, such park being prohibited by the zoning ordinance.
If the municipality had acted with dispatch and had taken official action against the appellants in, say 1966, the resolution of this matter would have been very easy. The municipality, however, did not take action until February 15, 1968. Did such inaction constitute acquiescence?
Appellants cite Sheedy, supra, for the proposition that official inaction for several years is enough to constitute acquiescence. The effect of Sheedy, however, was greatly restricted by Hasage v. Philadelphia Zoning Board, 415 Pa. 31, 202 A. 2d 61 (1964). Hasage is a stronger precedent for the instant case since it is more recent and expressly emphasizes that the holding in Sheedy was peculiar to its facts.
Appellants cite Heidorn Appeal, supra, for the proposition that the equitable concept of laches may be imputed to a municipality because of long-term municipal inaction. The municipality in Heidorn Appeal failed, over a ten-year period, to object to an awning which violated by ten feet the municipality's setback requirements. *308 Here, the record is not clear concerning the length of the official inaction. Action was finally taken in early 1968, but the improper actions of the appellants may have commenced in 1962 or in 1963, or they may have commenced in 1965. Inasmuch as a ten-year period of inaction is not involved here, and inasmuch as the appellants' violation here seems far more serious, we are reluctant to apply Heidorn Appeal to this case, especially in light of the comment in Ryan, Pennsylvania Zoning Law and Practice, Section 8.3.4 (1970): "This 4-3 decision seems out of line with other similar cases, unless it can be explained on a de minimis basis." Locating a trailer park with some 29 trailers in an area where it violates the zoning can hardly be characterized as de minimis. Also, in Heidorn Appeal, there was no finding, as there is here, that the violation was a threat to the public health, safety, or morals. Indeed, in Heidorn Appeal, not only were there no protestants, indeed 75 neighbors signed a petition asking that the variance be granted. Here, the neighbors were protesting and testifying at length concerning the adverse effect of the violation.
Finally, we note the following comment from Ryan, supra, which seems particularly appropriate here: "Municipalities do not always act as they should. Through inattention, a shortage of personnel, or the desire of the officials to let sleeping dogs lie, zoning violations sometimes can go on for years and years. Where there is nothing more than inaction by the municipality, the cases usually have held that no vested right is created."
Affirmed.
NOTES
[1] We assume this means all trailers for which permits had not been issued.
[2] Section 3001 of the Pittsburgh Zoning Ordinance states, in pertinent part: "The administration of this ordinance shall be vested in the Administrator who is hereby charged with the duty and authority to approve for zoning, applications for occupancy permits." Section 3002(4)B states: "Approval for zoning by the Administrator of an occupancy permit application shall be required prior to the issuance of any building permit."
[3] The record is somewhat unclear concerning the years 1962 through 1965.