Township of Haverford, Appellant, *v.* Anna T. Spica, Appellee.

Argued October 11, 1974, before Judges CRUMLISH, JR., KRAMER and WILKINSON, JR., sitting as a panel of three.

*E. J. O'Halloran,* with him, of counsel, *O'Halloran, Stack, Smith & Ginley, P.C.,* for appellant.

*Jackson M. Stewart, Jr.,* with him *Richard H. Gross* and *Natale, Zetusky & Stewart,* for appellee.

OPINION BY JUDGE KRAMER, November 27, 1974:

This is an appeal from an order of the Court of Common Pleas of Delaware County, dated December 18, 1973, which reversed an order of the Zoning Hearing Board (Board) of Haverford Township (Township) dated May 24, 1973. The Board's order denied a request by Anna T. Spica (Spica) "to establish a nonconforming use and/or variance." The lower court's opinion stated, alternatively, that the Board had erred legally in determining (1) that a valid nonconforming use had not been established; and, (2) that a variance should not be granted. The Township has appealed to this Court.

From the Board's findings, it appears that the property in question was first zoned residential "A" in 1925, and is still so classified. The record does not establish the use of the property before the effective date of the 1925 ordinance. Whether it was used for

residential, commercial or no use at that time is unknown. In 1938 the Township issued a building permit for this property, allowing for the construction of a four room, one-story office structure. The 1938 records of the Township designate the proposed use as "real estate office" and these records have been in the custody of the Township since the permit was issued. There is nothing in the record to indicate that it was improper to issue the permit, and, certainly there is a rebuttable presumption that the official issuing the permit acted properly. *Mamallis v. Millbourne Borough*, 401 Pa. 375, 164 A. 2d 209 (1960).

The building proposed in 1938 was erected in that year, apparently in violation of the existing zoning restrictions, and was, in fact, used as a real estate office until 1946, when it was purchased by a dentist for use as a professional office. In 1967 Spica and her husband (a certified public accountant) purchased the property, and Mr. Spica conducted his accounting practice there until his death in November 1971. After Mr. Spica's death, his wife used the premises to "wind up" her late husband's business, and this activity included some use of the structure by a Mr. Albert P. Stagliano, a certified public accountant, who purchased Mr. Spica's practice after his death. On or about March 1, 1973, Spica applied to the Township Building Inspector for permission to lease the premises as a professional office. The Building Inspector refused to issue an occupancy permit, and Spica (at this time unrepresented by counsel) at the suggestion of the inspector, applied to the Board for a variance and a special exception to enable her to continue use of the premises as a professional office building. Both applications were denied by the Board after hearing.

From the record it seems that the action of the Building Inspector was the first official action taken by the Township (with respect to the building's appar-

ent nonconformance with the applicable use restrictions) since the original building permit was issued in 1938. As noted above, the 1938 permit was issued with specific notice of its real estate business usage.

After the unfavorable ruling by the Board, Spica appealed to the Court of Common Pleas of Delaware County, which remanded the case for a further hearing. After a second hearing, the Board reaffirmed its earlier decision and the court below reversed, finding alternative errors of law.[1]

Our scope of review in zoning cases where no additional testimony is taken by the court below is limited to a determination of whether the Board committed an abuse of discretion or an error of law. *See Dewald v. Board of Adjustment, City of Pittsburgh,* 13 Pa. Commonwealth Ct. 303, 320 A. 2d 922 (1974) ; *Campbell v. Zoning Hearing Board of Plymouth Township,* 10 Pa. Commonwealth Ct. 251, 310 A. 2d 444 (1973).

Preliminarily, we note that zoning cases tend to suffer from a confusion of terms, and as a result, zoning officials, property owners and attorneys constantly use the wrong forms and the wrong terminology, thus creating unwarranted confusion.

There are four ways a property owner can secure relief from zoning restrictions (short of challenging the validity of the ordinance itself). He can request a special exception; he can ask for a variance; he can establish a valid nonconforming use; or he can attempt to establish what has been termed a "vested right" to violate the restriction. Ryan, *Pennsylvania*

---

[1] The lower court noted that "[a]t the first hearing the Board denied the application on the theory that, although the building was a non-conforming structure, such non-conforming use had been abandoned. Convincing evidence to the contrary was presented at the second hearing and the Board discarded this reasoning and adopted the view" that it was not a valid nonconforming use.

*Zoning Law and Practice,* section 8.1 (1970). Since all four methods are mentioned in this case, we shall consider each in turn.

A special exception is granted within the discretion of the zoning board, under the authority of an ordinance permitting the exercise of such discretion. A use which requires a special exception is not really prohibited by the ordinance; but, it is a permitted use when the property owner meets all of the conditions or requirements of the zoning ordinance and thereby obtains the approval of the board. In the instant case, while Spica did file a paper entitled "Petition for Special Exception," the Board made no ruling on this matter, the lower court took no cognizance of it, and, indeed, there is no discussion of it in the parties' briefs before this Court. We shall assume, therefore, that Spica has no viable claim in this regard.

A variance, unlike a special exception, admits that the use of the land in question violates the ordinance, but acknowledges that some special, unique hardship is imposed on the *particular* property involved by the operation of the zoning restrictions. To obtain a variance, a property owner must prove (1) that an unnecessary hardship unique to the property exists; and, (2) that the variance, if granted, would not be contrary to the public health, safety, welfare or morals. *Dewald, supra,* and *Rees v. Zoning Hearing Board of Indiana Township,* 11 Pa. Commonwealth Ct. 461, 315 A. 2d 317 (1974).

In this case the Board determined that Spica had not shown the requisite hardship, and that she had not proven that the variance would not be detrimental to the welfare of the community. In *Surrick v. Zoning Hearing Board of the Township of Upper Providence,* 11 Pa. Commonwealth Ct. 607, 613-14, 314 A. 2d 565, 568 (1974) we said: "An unnecessary hardship can be established: (1) by a showing that the physical char-

acteristics of the property were such that it could not in any case be used for the permitted purpose or that the physical characteristics were such that it could only be arranged for such purpose at prohibitive expense . . . or (2) by proving that the characteristics of the area were such that the lot has either no value or only a distress value for any purpose permitted by the zoning ordinance. . . . Philadelphia v. Earl Scheib Realty Corp., 8 Pa. Commonwealth Ct. 11, 17, 301 A. 2d 423, 426 (1973). Mere economic hardship will not support the grant of a variance . . . except where the zoning regulations complained of render the complainant's property practically valueless. Colonial Park for Mobile Homes, Inc. v. Zoning Hearing Board, 5 Pa. Commonwealth Ct. 594, 599, 290 A. 2d 719, 722 (1972)."

In light of the above, and given our narrow scope of review, we cannot say that the Board was in error. From the record, it does not seem that Spica's alleged hardship amounts to much more than a complaint that she cannot rent the property for commercial purposes, a hardship that is equally imposed on all properties located in a residential zone. There is no assertion that the land cannot be used for residential purposes, even though some alteration of the structure might be required. In view of the heavy burden that an applicant for a variance must meet, and mindful that "[v]ariances, especially those authorizing a commercial use in a residential district, should not be granted with a lavish hand," we agree with the Board that a variance should not be granted in this case. *Pfile v. Borough of Speers,* 7 Pa. Commonwealth Ct. 226, 234, 298 A. 2d 598, 603 (1972).

The Board found no valid nonconforming use. A nonconforming use requires that the use in question predate the relevant zoning restriction (or any pertinent amendment thereto). Both parties cite *Ryan, supra,* as providing an accurate statement of the law

regarding nonconforming uses: "A non conforming use is any activity or structure which came into existence prior to the Zoning restriction involved, but which now violates that restriction. The most common example is the use which antedates any zoning, but a use or building which came into existence under a permissive zoning ordinance and now finds itself in violation of a restrictive amendment also is treated as non conforming." *Ryan* at section 7.1.1.

In this case, the Board specifically found that the ordinance in question was enacted in 1925, and that the building was erected in 1938. It also appears, from the record, that the nonconformance involved in this case stems from the original 1925 ordinance and not any subsequent amendment. In the usual case such findings would end the matter, for they would support a zoning board's conclusion that a valid nonconforming use did not exist.

Faced with this principle, Spica's final argument, and one which was adopted by the lower court in its opinion,[2] is that the failure of the Township to take any action respecting the nonconformance until 36 years after the use commenced, coupled with the Township's issuance in 1938 of a building permit which knowingly authorized a use which violated the 1925 ordinance, created a "vested right" under *Heidorn Appeal,* 412 Pa. 570, 195 A. 2d 349 (1963). We agree.

In *Heidorn, supra,* the property owner had inadvertently violated a setback requirement for approximately ten years before the municipality sought to enforce the ordinance. The Supreme Court, holding for

---

[2] The court below believed that the "vested right" it found in Mrs. Spica established a "non-conforming use." In a technical sense, this is not correct, though the vested right theory is related to the more traditional law of nonconforming uses. *Ryan, supra,* section 8.1, considers these two theories as distinct from one another, and this seems the best way to avoid confusion.

the property owner, said: "While courts are reluctant, and should be, to impose the sanction of laches on governmental divisions, equity cannot close its eyes to the sloth, indifference or official neglect of a municipal body any more than it can to the neglect of an individual where such neglect harms an innocent person.

"There is nothing in the record to excuse the township's indifference to the presence of the overhang and stoop in front of the Heidorn house. It cannot be said that these objects were concealed from public view. The overhang stuck out like the proverbial sore thumb, and the stoop stuck out like the stoop it was for the world to see and stumble over." 412 Pa. at 573, 195 A. 2d at 351.

In the instant case the Township acquiesced for 36 years in what were obvious different commercial uses of Spica's property. There is evidence in the record indicating that in the past a small, but prominent commercial sign had been displayed on the premises, and that parking facilities for the clients of the different professional occupants were in plain view to anyone viewing the property. Further, and most importantly, the original construction was accomplished on the authority of a permit, issued by the Township, which gave a clear indication of a commercial use for the premises. If the Township's version of the facts is correct, then the Township not only permitted construction of a structure, the obvious use of which was in violation of the ordinance, but it also did the affirmative act of sanctioning the construction and use through the issuance of its own building permit. The Township was then silent for 36 years. In such circumstances, we believe the property owner is entitled to rely on the Township's apparent acquiescence.

The area of "vested right" or "laches," as Ryan says, "lacks a precise niche in zoning terminology." *Ryan, supra,* section 8.1.1. While this doctrine is not

often referred to by the courts,[3] *Heidorn* is clear authority for its application in a proper case. In the instant case there is nothing to indicate that reliance upon the 1938 permit was not in good faith. *See Ryan, supra,* section 8.3.2.

So that this opinion is not misinterpreted, we reiterate that our finding of a vested right in Spica follows from the existence of the 1938 building permit and the circumstances surrounding its issuance, from the extremely long length of time which has passed since the nonconformance began, and from the obvious nature of the nonconformance. Just as the Supreme Court in *Heidorn, supra,* was reluctant to impose the effect of laches on a municipality, so are we hesitant to do so. Nonetheless, we cannot ignore the compelling facts of this case.

In light of the above opinion, the order of the Court of Common Pleas of Delaware County, dated December 18, 1973, directing the issuance of a license to use the premises as a professional office, is affirmed.

---

[3] We recently distinguished *Heidron, supra,* in *Dewald v. Board of Adjustment, City of Pittsburgh,* 13 Pa. Commonwealth Ct. 303, 320 A. 2d 922 (1974). In that case the property owner complained of (at the most) a six-year period of inactivity on the part of the municipality, and there was no act of municipal officials on which reliance could have been placed. The facts of the instant care are clearly distinguishable from *Dewald.*