184

Three Rivers Youth, a Non-Profit Corporation, Appellant v. Zoning Board of Adjustment for the City of Pittsburgh, Appellee.

Three Rivers Youth, a Non-Profit Corporation, Appellant v. Zoning Board of Adjustment for the City of Pittsburgh, Appellee.

Three Rivers Youth, a Non-Profit Corporation, Appellant v. Zoning Board of Adjustment for the City of Pittsburgh, Appellee.

Argued October 9, 1981, before Judges WILLIAMS, JR., MACPHAIL and PALLADINO, sitting as a panel of three.

*James F. Malone, III, Dickie, McCamey & Chilcote,* for appellant.

*D. R. Pellegrini,* Deputy City Solicitor, with him *Mead J. Mulvihill, Jr.,* City Solicitor, for appellee.

OPINION BY JUDGE MACPHAIL, December 15, 1981:

Three Rivers Youth, Inc. (Three Rivers) has appealed to this Court from a decision of the Court of Common Pleas of Allegheny County which affirmed the Zoning Board of Adjustment of the City of Pittsburgh's (Zoning Board) denial of Three Rivers' protest appeals from the revocation by the Superintendent of the Bureau of Building Inspection of occupancy permits for three properties being used as group homes for children by Three Rivers.

While three separate properties are involved in this appeal, the facts involved in each are basically the same. Three Rivers purchased each of these homes with the open intention of using them as group homes. Two of the homes were in an R2 residential district, with the third in an R3 district. For at least two of the properties, the Agreement of Sale was specifically conditioned upon Three Rivers being able to obtain occupancy permits for their use. Upon the advice of the Administrator of the Code Enforcement Division for the City of Pittsburgh, with full disclosure of their intent to use the properties as group homes, Three Rivers filed occupancy permits in each case for a two family dwelling to be occupied by three unrelated peo-

ple and two lodgers.[1] These permits were granted[2] and Three Rivers entered into operation of the group homes. Approximately one year after the last permit was issued, and over seven years after the first permit was issued, the occupancy permits for all three properties were revoked on the grounds that these group homes were an institutional use and therefore could not operate under a two family dwelling occupancy permit.[3]

Three Rivers appealed to the Zoning Board, raising three challenges to the revocations: 1) that the city was estopped, under a theory of vested rights, from revoking a permit issued after full disclosure of the facts; 2) that the group homes were not an institutional use, but were actually a "family" as defined by the ordinance; and 3) that the group homes operated like a biological family and therefore could not be excluded by a restrictive definition of the term "family." The Zoning Board refused to consider the first and third arguments and based its affirmance upon a finding that the group homes were an institutional use. Three Rivers then perfected an appeal to the Court of Common Pleas which appointed a referee to take such added testimony as needed and to submit to the Court proposed Findings of Fact and Conclusions of Law. By agreement of counsel, the referee took no further testimony and based his proposed decision upon the record below and arguments of the parties. The ref-

---

[1] The ordinance defines "family," in part, as a "group of not more than three (3) persons who need not be related by blood or marriage or adoption, living together as a single housekeeping unit. . . ." Lodgers are permitted as an authorized use by the Administrator.

[2] In one case the Administrator's office informed Three Rivers that no new permit was required as Three Rivers was continuing a prior use.

[3] The ordinance defines "dwelling" as a "building or portion thereof designed for and used exclusively for residential occupancy, . . . but not including . . . institutional facilities. . . ."

eree proposed overruling the Zoning Board for the reason that Three Rivers had acquired vested rights to its use of the properties. The Court of Common Pleas chose not to adopt the referee's proposal, holding that Three Rivers had no vested rights to group home usage and that since the group homes were an institutional use and not a family, then the permits were properly revoked. Three Rivers has again raised all three challenges before this Court. Since we believe Three Rivers has acquired vested rights to group homes use, we need not address the other arguments.

The doctrine of vested rights has assumed a position of increasing importance in Pennsylvania zoning law. Ryan in his definitive treatise on zoning, noted that

[the vested rights] problem becomes more acute where the municipality acquiesces in the specific illegality involved, *or takes affirmative action indicating that the use is legal,* for here the interest in protecting the owner's expectancy is enhanced sufficiently to permit the owner to argue with force that it overcomes the interest of the community in enforcing the ordinance. (Emphasis added.)

R. S. Ryan, Pennsylvania Zoning Law and Practice, §8.3.1 (1970).

This Court gave specific approval to the vested rights doctrine in *Department of Environmental Resources v. Flynn,* 21 Pa. Commonwealth Ct. 264, 344 A.2d 720 (1975). In *Flynn,* we articulated for the first time a five factor approach to determining whether an owner acquired vested rights to use his property contrary to land use laws in effect, to wit:

1) the owner's due diligence in attempting to comply with the law;

2) his good faith throughout the proceedings;

3) the expenditure of substantial unrecoverable funds;

4) the expiration without appeal of the period during which an appeal could have been taken from the issuance of the permit;

5) the insufficiency of the evidence to prove that individual property rights or the public health, safety or welfare would be adversely affected by the use of the permits.

The principle of vested rights has been reaffirmed several times by this Court, see, e.g. *Appeal of Girolamo,* 49 Pa. Commonwealth Ct. 159, 410 A.2d 940 (1980); *Turner v. Martz,* 42 Pa. Commonwealth Ct. 328, 401 A.2d 585 (1979); *Waber v. Zoning Board of Adjustment,* 41 Pa. Commonwealth Ct. 565, 400 A.2d 893 (1979), and has been approved of by our Supreme Court. *Petrosky v. Zoning Hearing Board of the Township of Upper Chichester,* 485 Pa. 501, 402 A.2d 1385 (1979).

The Zoning Board argues that the line of cases cited to above all have concerned factual mistakes chargeable against the municipalities involved which resulted in the landowners being given permits to which they were not entitled. They note that in this case there were no factual errors made, only a misinterpretation of the ordinance by the Zoning Administrator to which the city should not be bound. We do not believe this distinction dictates that the vested rights theory as enunciated in *Flynn* is inapplicable.

Again we note Ryan's observation on vested rights:

[W]hat of the permit issued in error as a result of an honest mistake or a *misinterpretation of the zoning ordinance?* Where the 'mistake' is one of arguable interpretation, the existence of appeal procedures for zoning cases implies that the permit becomes final once the time for appeal has expired: Oteri Appeal, 372 Pa.

557, 93 A.2d 772 (1953); Young v. Board of Adjustment of Wilkinsburg, 349 Pa. 450, 37 A.2d 714 (1944); Loucks v. Crowther, 11 Ches. Co. Rep. 497, 32 D. & C.2d 570 (1963).

*Ryan, supra,* §8.3.2.

Furthermore, in a case preceding *Flynn, Township of Haverford v. Spica,* 16 Pa. Commonwealth Ct. 326, 328 A.2d 878 (1974), this Court did apply the doctrine of vested rights in a factual setting similar to that presented in this case. In *Spica,* the Township in 1938 issued a permit for a real estate office in a area zoned for residential use only. The Township acquiesced in this obvious commercial use for 36 years. In analyzing the reasons for finding that the owner had acquired a vested right in using this land for a commercial use, this Court stated:

> Further, and most importantly, the original construction was accomplished on the authority of a permit, issued by the Township, which gave a clear indication of a commercial use for the premises. If the Township's version of the facts is correct, then the Township not only permitted construction of a structure, the obvious use of which was in violation of the ordinance, but it also did the affirmative act of sanctioning the construction and use through the issuance of its own building permit.

*Id.* at 333, 328 A.2d at 882.

We therefore believe that this case should be examined against the five factors enunciated in *Flynn* to see if Three Rivers has in fact acquired vested rights in the continued use of these properties as group homes.[4]

---

[4] We note that the Board made no findings regarding these five factors, although evidence concerning these factors was taken. Although the lower court did rule on this issue, it took no additional evidence, and therefore our scope of review is to determine whether

Regarding the due diligence requirement, it is clear that Three Rivers made every attempt to comply with the law. Before finalizing the purchase of these properties, Three Rivers contacted the Administrator of Code Enforcement to find out how to proceed properly under the ordinance. The Administrator counseled them to apply for a two family dwelling with two lodgers permit in each case. These recommendations were followed by Three Rivers in their permit applications.

Three Rivers also acted in good faith. No misrepresentations were made and the officials of Code Enforcement were fully informed as to the intended use of the properties by Three Rivers.

Three Rivers had conditioned the purchase of the properties upon obtaining proper permits. It then spent over $93,500 to purchase the properties in reliance upon the Administrator's recommendations. Further, substantial sums were incurred in renovating the buildings to meet the ordinance requirements and the special needs of the group homes. Thus, we find there has been an expenditure of substantial unrecoverable funds.

As for the fourth factor, Three Rivers has clearly met this requirement. No appeals were taken within the proper appeals time.[5]

Finally, we come to the factor concerning adverse effects to the public health, safety, or welfare or to

the Board has abused its discretion or committed errors of law. *Food Bag, Inc. v. Mahoning Township Zoning Board of Adjustment*, 51 Pa. Commonwealth Ct. 304, 414 A.2d 421 (1980).

[5] The city argued orally that this usage could not have been appealed by others because of a lack of notice as to the proper use. We fail to find merit to this argument. This was not an improper usage which interested persons would not normally be aware of. The usage of the properties as group homes was clearly apparent and would put others on notice of the use such that the statutory provisions on time for appeal would begin to run.

individual property rights. The record contains no evidence of any adverse effects. These homes are strictly regulated under Department of Public Welfare guidelines and are operated much like any other home with children. They are in no way contrary to the purposes of a residential district. The absence of any evidence of complaints by neighboring landowners during the period of operation of these homes buttresses a finding that individual property rights have not been harmed by the presence of these group homes.

In summary, then, we find that the five factors enunciated in *Flynn* have been met. We hold that Three Rivers has acquired vested rights in the continued use of these properties as group homes and that the Zoning Board erred as a matter of law when it denied Three Rivers' appeals from the revocation of its occupancy permits. The order of the trial court affirming the action of the Zoning Board is therefore reversed.

ORDER

AND Now, this 15th day of December, 1981, the order of the Court of Common Pleas of Allegheny County, dated February 27, 1981, is reversed and the occupancy permits involved are hereby reinstated.