## Garretson v. Stonycreek Township

*Thomas M. Kalinyak,* for petitioners.

*William R. Carroll,* for respondent.

CASCIO, *J.,* August 17, 1989 — This matter is before the court on a local agency appeal filed pursuant to the provisions of 2 Pa.C.S. §751 et seq. Petitioners, Dennis Garretson and Kathleen Garretson, husband and wife, have appealed a decision rendered by the solicitor of the township of Stonycreek, respondent, acting as a hearing officer, upholding the actions of the township sewage enforcement officer who denied a sewage permit for which petitioners had applied.

We heard this matter de novo, because a full record of the proceedings before the hearing officer was not made available. See 2 Pa.C.S. §754(a). Accordingly, we have made our own findings of fact and conclusions of law. See *Board of Pensions and Retirement of the City of Philadelphia v. Einhorn,* 65 Pa. Commw. 144, 442 A.2d 21 (1982) and *Tieger v. Philadelphia Fair Housing Commission,* 90 Pa. Commw. 470, 496 A.2d 76 (1985).

We took testimony from Dennis Beal, sewage enforcement officer of the Township of Stonycreek, Bruce A. Diehl, predecessor in title to petitioners, and Dennis R. Garretson, one of the petitioners. Various exhibits including petitioners' exhibits A through F, consisting of photographs of the premises, and exhibit I, a copy of the deed by which petitioners acquired title to the premises, were admitted by stipulation. The same is true of respondent's exhibits 1 through 7, additional photographs of the subject premises; Mr. Garretson's application for a sewage disposal system, identified as exhibit 8; Mr. Diehl's application for a sewage disposal system, identified as exhibit 9; and a certified copy of the Stonycreek Township Building and Sewage Permit Ordinance, identified as exhibit 10. In addi-

tion, two drawings identified as petitioners' exhibits G and H were offered and admitted as evidence.

## FINDINGS OF FACT

(1) Petitioners are the owners of a parcel of land consisting of approximately 0.9 acres, situate in Stonycreek Township, Somerset County, Pennsylvania, which they acquired from Bruce A. Diehl and Marjorie R. Diehl, husband and wife, parents of petitioner Kathleen A. Garretson, by deed dated August 13, 1987 and recorded in Somerset County Deed Book Volume 1004, at page 472.

(2) The Diehls purchased this property in 1971 with the intention of building a cottage on the lot.

(3) In May 1972, Mr. Diehl submitted an application for sewage disposal system to Clifford Mostoller, then the township sewage enforcement officer, which indicated that the Diehls intended to construct a two-bedroom non-residential structure on the lot. Mr. Diehl also paid Mr. Mostoller a $25 permit application fee.

(4) Mr. Mostoller visited the property and instructed Mr. Diehl to dig three test holes on the lot for the percolation test procedure. Following the testing, Mr. Diehl excavated an area on the lot and installed a gasoline tank with a siphon system and a five-foot-six-inch-wide drain field to serve as an on-lot septic system. After another inspection by Mr. Mostoller, Mr. Diehl installed a five-foot-six-inch-wide "T" across the end of the drain field. Both the drain field and the "T" were filled with a total of 20 tons of stone.

(5) When Mr. Mostoller returned to inspect the "T" area, the remaining drain field had been covered with fill. Based upon Mr. Mostoller's examina-

tion of the "T" and his comments, Mr. Diehl back-filled the "T" and commenced use of the system.

(6) There are presently two structures on the property. One is a two-story boathouse with no plumbing. The other is a shed containing a toilet and sink which is located on top of the septic system. Mr. Diehl had originally intended to build a two-bedroom summer cottage on the premises where the shed is currently located but because of his illness was unable to proceed with this construction.

(7) The Garretsons intend to build a two-bedroom summer cottage with indoor plumbing on the lot near the septic system. The shed would be destroyed but the boathouse would remain. The proposed cost of this construction is approximately $10,000.

(8) The present boathouse and the proposed summer home both lack heating systems and other winterization and are intended only for occasional use and occupancy, including some overnight occupancy, during the summer months.

(9) When Mr. Garretson approached the township supervisors in May 1988 for a building permit, he was advised that he would have to apply for a sewage disposal system permit pursuant to the provisions of a Township Ordinance adopted December 31, 1975 despite the fact that there is currently a septic system in place on the premises.

(10) Mr. Garretson filed an application for sewage disposal system no. E 31186 on May 14, 1988. Dennis Beal, who has been the sewage enforcement officer for the township for approximately one year, attempted to locate a copy of the sewage permit for which Mr. Diehl had applied in 1972. His search of the state and township records revealed that no application was filed there and no permit was is-

sued. He was able to acquire from Mr. Mostoller, the former sewage enforcement officer, a copy of the application filed by Mr. Diehl which contains no record of any soil tests, no record of any action approving or denying a permit, nor record of issuance of any permit.

(11) Mr. Beal proceeded to test the lot for suitability for an on-lot sewage system and determined that, although there was no evidence that the existing system was malfunctioning, the site is unsuitable for on-lot sewage disposal because of a limiting zone of excessive rock found within 20 inches of the soil surface, in violation of Title 25, Pennsylvania Code, Chapter 73.14 (b). Based upon this finding, he rejected the application and denied the permit on June 16, 1988.

(12) Mr. Beal testified that all of the lots in this area of the subdivision have soil conditions similar to that found on the Garretsons' lot. At least one permanent residence, located approximately 110 to 150 feet from the site of Mr. Garretson's proposed construction, utilizes an on-lot disposal system which appears to have been installed in the late 1960's. Another permanent residence, approximately four to six years old, is situated on a lot adjacent to the Garretsons' lot, apparently also served by an on-lot disposal system.

## DISCUSSION

Petitioners argue that, but for the formality of the possession of a sewage permit, they and their predecessors in title have done everything necessary to comply with the terms of the Sewage Facilities Act and the Township Ordinance adopted December 31, 1975. In addition, they point to the fact that Mr. Mostoller, as an agent of the township, performed

the tests required by the act and the regulations promulgated by the Department of Environmental Resources and indicated to Mr. Diehl in the presence of Mr. Garretson that the system was acceptable as installed. Based upon these facts, petitioners claim that they are entitled to equitable relief in the nature of an order directing the issuance of a building permit.

The township argues that the record clearly demonstrates that no sewage permit was issued to the Diehls by Mr. Mostoller and that Mr. Beal acted properly in denying the Garretsons' permit and adequately explained his reasons in compliance with the act and the regulations. On the issue of equitable estoppel, the township argues that this would cover only what improvements existed on the land at the time a permit was issued if one had been issued, and that any further or expanded improvements would not be covered.

## Equitable Relief

We must first determine whether petitioners may claim equitable relief in a local agency appeal. Our scope of review is described in 2 Pa.C.S. §753 which provides:

"(a) *General rule* — A party who proceeded before a local agency under the terms of a particular statute, home rule charter, or local ordinance or resolution shall not be precluded from questioning the validity of the statute, home rule charter or local ordinance or resolution in the appeal, but if a full and complete record of the proceedings before the agency was made such party may not raise upon appeal any other question not raised before the agency (notwithstanding the fact that the agency may not be competent to resolve such question) unless allowed by the court upon due cause shown.

"(b) *Equitable relief* — The remedy at law provided by subsection (a) shall not in any manner impair the right to equitable relief heretofore existing, and such right to equitable relief is hereby continued, notwithstanding the provisions of subsection (a)."

Petitioners have not raised any issues which would come under the purview of subsection (a). It is clear that the petitioner's appeal has been timely filed and that our court has jurisdiction. See *D'Amico v. Board of Supervisors, Township of Alsace,* 106 Pa. Commw. 411, 526 A.2d 479 (1987); *Consumer Investment Fund v. Supervisors of Smithfield Township,* 110 Pa. Commw. 413, 532 A.2d 543 (1987). However, we do not read subsection (b) as conferring equitable powers on our court in deciding local agency appeals.

Petitioners, under subsection (b), could have sought separate equitable relief even at the same time they pursued their agency appeal. *Lundy v. City of Williamsport,* 120 Pa. Commw. 520, 548 A.2d 1339 (1988). See also, *Arsenal Coal Co. v. Department of Environmental Resources,* 505 Pa. 198, 477 A.2d 1333 (1984), which discusses the use of 2 Pa.C.S. §703(b) in appeals from state agencies, the language of which is identical to and upon which is patterned section 753(b). See 2 Pa.C.S. §753, Official Source Note. We assume that petitioners chose not to do this because the Local Agency Act provides an adequate statutory remedy. Thus, it appears to us that the only "equitable" argument available to petitioners in this proceeding concerns the issue of equitable estoppel.

### Equitable Estoppel

In a local agency appeal which is heard de novo, the governmental body has the burden " 'to prove all

of the elements, both procedural and substantive, necessary to support its adjudication.' " *Lawrence. Township Appeal,* 117 Pa. Commw. 508, 513, 544 A.2d 1070, 1074 (1988), quoting *Allegheny County Health Department v. Ligans,* 16 Pa. Commw. 74, 78, 329 A.2d 878, 879 (1974). We find that respondent has sustained its burden of proof by establishing that: (1) no sewage permit was issued to Mr. Diehl (finding of fact no. 7); (2) Mr. Beal's testing of the site revealed that it was unsuitable for an on-lot sewage disposal system (finding of fact no. 11); and (3) Mr. Garretson's permit application was denied based upon these findings (finding of fact no. 11).

It is also clear to us that despite the fact that Mr. Diehl applied for a permit and paid the application fee (finding of fact no. 3), and that the site testing procedure was undertaken and completed (finding of fact nos. 4 and 5), there is no way that petitioners can establish, by virtue of these facts standing alone, that a permit must be issued. While it is true that 35 Pa.C.S. 750.7(b)(2) provides that "[p]ermits shall be issued or denied within seven days after receiving an application for permit . . . ," Mr. Mostoller's failure to act within that time period cannot be deemed approval of the application because the Sewage Facilities Act does not contain any deemed approval language.

"We have previously recognized, however, that in order for a deemed approval to occur 'there must be an express legislative declaration of deemed approval in the statutory . . . provision in order to have such a substantive result produced by procedural tardiness.' Since the [Sewage Facilities] Act does not include a deemed approval provision, this court cannot supply such a provision through statutory construction." *D'Amico v. Board of Supervisors,*

*Township of Alsace, supra,* 106 Pa. Commw. at 414, 526 A.2d at 480. (citations omitted)

In addition, even if a permit had been issued based upon Mr. Diehl's application, there is some question as to whether it would have expired after two years because the construction of the structure described in the application submitted by Mr. Diehl (finding of fact no. 3) had not been commenced within that time period. See 35 Pa.C.S. 750.7(b)(7). Furthermore, had the permit been issued, based upon the testimony of Mr. Beal regarding the un-suitability of the lot for on-lot sewage disposal, the permit may have been subject to revocation under the terms of 35 Pa.C.S. 750.7(b)(6).

Having eliminated all of these possibilities, we conclude that the only way petitioners may prevail in this case is by establishing that they are other-wise entitled to have a permit issued based upon the concept of equitable estoppel which, in municipal permit cases, is applicable in the nature of a vari-ance and/or a vested right. *East Ridge Mining Inc. v. Township of Conemaugh,* 48 Somerset Leg. J. 154 (1989). Because we are dealing here with a sewage permit, only the vested right principle is applicable.

The general rule is that:

"[A] municipal permit issued illegally or in viola-tion of the law, or under a mistake of fact confers no vested right or privilege on the person to whom the permit has been issued and may be revoked not-withstanding that he may have acted upon the permit; any expenditures made in reliance upon such permit are made at his peril. . . . " *Vogt v. Port Vue Borough,* 170 Pa. Super. 526, 528, 85 A.2d 688, 690 (1952).

An exception to this general rule was established by the Commonwealth Court in *Commonwealth of Pennsylvania, Department of Environmental Re-*

sources v. *Flynn,* 21 Pa. Commw. 264, 344 A.2d 720 (1975) in which the court held that when a sewage permit was issued illegally or in error, an owner's good-faith reliance upon it should grant him a vested right to complete his work in certain limited circumstances. In *Petrosky v. Zoning Hearing Board of Upper Chichester Township,* 485 Pa. 501, 402 A.2d 1385 (1979) the Pennsylvania Supreme Court outlined a five-pronged test to be applied in interpreting *Flynn.*

"The Commonwealth Court in *Flynn, supra,* outlined five factors that must be weighed in determining whether one has acquired vested rights as the result of permits issued by government. These factors are:

"(1) his due diligence in attempting to comply with the law;

"(2) his good faith throughout the proceedings;

"(3) the expenditure of substantial unrecoverable funds;

"(4) the expiration without appeal of the period during which an appeal could have been taken from the issuance of the permit;

"(5) the insufficiency of the evidence to prove that individual property rights or the public health, safety or welfare would be adversely affected by the use of the permit." *Petrosky, supra,* 485 Pa. at 507, 402 A.2d at 1388.

We recently had occasion to apply this test in a building permit/sewer permit case. In *Black Township v. Sanner,* 48 Somerset Leg. J. 175 (1989) we dealt with a building permit which had been erroneously issued by the township in the absence of an issued sewage permit. There, a home had been constructed at substantial expense, and was to be connected to an unpermitted septic tank system which had been installed on the lot approximately

10 years before construction began on the house. The lot was tested after this error was discovered and it was determined that the only on-lot system which could be installed and permitted was an elevated sand mound system that would cost between $4,000 and $8,000.

We applied the *Flynn* test and determined that the property owner had clearly demonstrated that she had acquired a vested right in the building permit but not in the sewage permit. In rejecting the claim for the sewage permit, we found that the cases we had examined, which upheld the property owner's claim to a vested right in a municipal permit, involved situations where a permit had been issued. *Flynn, supra* (sewer permit); *Turner v. Martz,* 42 Pa. Commw. 328, 401 A.2d 585 (1979) (sewer permit); *Petrosky, supra* (zoning, building and use permits); *Nowak v. Bridgeville Borough Zoning Board,* 111 Pa. Commw. 470, 534 A.2d 165 (1987) (building permit). See generally, *East Ridge Mining Inc., supra,* 48 Somerset Leg. J. at 166-7 and the cases cited therein. Based on that analysis, we find no support for the contention that a vested right could be established where a permit had not been issued.

In *Sanner, supra,* we also analyzed the argument, implicit in the facts in the case at bar, that the failure of the township to enforce its ordinance or the Sewage Facilities Act in some way establishes a vested right even though a permit has not been issued. Our research led us to one case, *Appeal of Crawford,* 110 Pa. Commw. 51, 531 A.2d 865 (1987) in which municipal failure to enforce the law was analyzed. In *Crawford,* the Commonwealth Court held that, in addition to the criteria set forth in *Flynn, supra,* the property owner must establish "a long period of municipal failure to enforce the

law, when the municipality knew or should have known of the violation, *in conjunction with* some form of active acquiescence in the illegal use." *Crawford, supra,* 110 Pa. Commw. at 55, 531 A.2d at 867. (emphasis in original) The court also held that mere knowledge of violation of the law was not enough to amount to active acquiescence.

"We can find no case decided by our Supreme Court or this court where pure municipal failure to take action, even coupled with some knowledge of the violation by municipal officials, was held sufficient to grant a variance by estoppel. Indeed, in several cases we have held to the contrary. In the case presently before this court, there was no erroneously issued permit upon which the appellants relied as in *[Township of Haverford v.] Spica* [16 Pa. Commw. 326, 328 A.2d 878 (1974),] nor any other municipal *action* upon which appellants could reasonably rely." *Crawford, supra,* 110 Pa. Commw. at 57-8, 531 A.2d at 869. (emphasis in original; footnote omitted)

There is no evidence in this record that the township or any of its agents, except for Mr. Mostoller, knew that Mr. Diehl had installed and was using this system. Even if Mr. Mostoller's knowledge could be imputed to the township, the mere failure to take action is not sufficient to grant a vested right under the reasoning in *Crawford, supra,* and the cases cited therein. In addition, because no sewage or building permit had ever been issued here, we need not consider the *Flynn* criteria with respect to either permit.

## CONCLUSIONS OF LAW

(1) This court has jurisdiction to hear this appeal under the provisions of 2 Pa.C.S. §751, et seq.

(2) Because a complete record of the proceedings before the local agency was not made, this court could hear the appeal de novo, pursuant to 2 Pa.C.S. §754(a).

(3) Under the facts as presented, petitioners have failed to establish that they are entitled to the issuance of a sewage permit.

## ADJUDICATION

And now, August 17, 1989, consistent with the foregoing opinion, peitioners' local agency appeal is dismissed. Costs on petitioners.