Victor Marzo and Jennie Marzo, his wife, Appellants *v.* The Zoning Hearing Board of Abington Township and Joseph and Ethel Brady. Township of Abington, Intervening Appellee.

226

Argued April 7, 1977, before Judges Kᴀᴍᴇʀ, Wɪʟ-
ᴋɪɴꜱᴏɴ, Jʀ. and Bʟᴀᴛᴛ, sitting as a panel of three.

*Jeremiah J. Cardamone,* with him *Timoney, Knox, Avrigian & Hasson,* for appellants.

*James W. Brown, Jr.,* for appellee.

*Daniel B. Michie, Jr.,* with him *Fell, Spalding, Goff & Rubin,* for intervening appellee.

OPINION BY JUDGE WILKINSON, JR., May 18, 1977:

Appellants appeal a decision of the Montgomery County Court of Common Pleas which affirmed appellee's refusal of their application to continue a radiator repair business in the garage of their residence located within a residential zone. We affirm.

The parties have submitted an agreed-upon statement of the case. Appellants own and occupy property within a residential zone which is improved with a single-family detached dwelling and a detached wooden garage located 12 to 13 feet from the rear property line. Within the garage, although no sign on the premises indicates its existence, appellants have operated a shop for the repair of automobile radiators for at least ten and perhaps 15 years as of 1975. Appellants admit that the shop has always been in violation of the local zoning ordinance and does not constitute a nonconforming use.

Sometime in 1966, intervening appellee's then zoning officer sent a letter to appellants concerning the zoning violation. No further action was taken by either appellee or intervening appellee until January 24, 1974, when the present zoning officer advised appellants that the shop was in violation of the zoning ordinance. On September 23, 1974, the zoning officer sent appellants a certified letter citing the violation and giving them 30 days in which to relocate the business.

Appellant-husband testified that the intervening appellee had taken no action against him since the

letter nine years before, even though it had actual notice of his operation subsequent to that time because he had performed repairs on some of its vehicles. It developed, however, that he had done such work for another commercial facility where intervening appellee regularly sends its trucks for repairs.

At the hearing 35 persons signed as being opposed to the application and ten as in favor. Appellants' next-door neighbor testified that to the best of his recollection the shop had been in existence no more than 12 years. His wife testified that it was only in operation ten years. She testified further that the shop was operated seven days a week at varying hours (including some evenings) and that it constituted a fire hazard. Both stated that the operation was very noisy. A neighbor living to the rear of the shop testified that it emitted black smoke.

Appellant-husband indicated that he would comply with conditions that he not conduct his business during Saturday, Sunday or evenings. Despite this offer, and the fact that there have been at least three other nonresidential uses of property within the zone,[1] appellee denied appellants' application. On appeal, the common pleas court remanded the case with directions that appellee and intervening appellee be represented by different solicitors, although intervening appellee had not participated in either the hearing before appellee nor the appeal to the court below. On November 7, 1975, intervening appellee's building inspector reported that the premises were in violation of the zoning ordinance because radiator repair shops were not allowed in the zone and that the change of use of the garage required it to have masonry construction. However, the township health officer and fire marshal reported no violations.

---

[1] According to the agreed-upon statement of facts, one of these uses may be nonconforming and another has been discontinued.

A subsequent hearing was held on November 16, 1975. Testimony of eight persons and letters of 79 were received in opposition to appellants' application. One resident testified in favor. The same next-door neighbors who had testified in the first hearing testified that several persons had driven to the shop to drop off radiators and that black smoke and fumes were being emitted from it. A new resident, living next door on the other side, testified that banging noises could be heard from appellants' property on occasional days (including Saturdays and Sundays) and at least one evening within a two-week period. Appellant-husband stated that he would not conduct his business either on Sunday or in the evenings. He requested that appellee grant a temporary variance, subject to such conditions as appellee might impose, for a period of eight years from the date of the first zoning hearing.

On December 17, 1975, appellants' application was again denied. An appeal to the common pleas court was dismissed on May 6, 1976, from which this appeal was taken. On June 15, 1976, counsel for intervening appellee filed an entry of appearance and notice of intervention and re-filed a notice of intervention on September 9, 1976, because appellants had filed a petition to strike the previous intervention. On September 17, 1976 this Court, by President Judge BOWMAN, denied appellants' petition.

Appellants' first argument is that they have a "vested right" to continue their business. They contend that they operated the business openly in violation of the zoning ordinance for 15 years, that intervening appellee had actual notice of such use for the last nine years, and therefore intervening appellee's failure to object throughout that time requires the imposition of laches against any present claim of violation. We cannot agree. The record shows that the

only irregularity by the intervening appellee was mere delay in enforcing its zoning ordinance, and as we have recently stated, "mere delay in enforcement does not create a vested right to use property in violation of zoning regulations." *Lewis v. Zoning Hearing Board of Lower Gwynedd Township,* 24 Pa. Commonwealth Ct. 574, 576, 357 A.2d 725, 726 (1976).

Appellants contend, however, that the case falls within the rationale expressed by our Supreme Court in *Heidorn Appeal,* 412 Pa. 570, 195 A.2d 349 (1963) and by this Court in *Township of Haverford v. Spica,* 16 Pa. Commonwealth Ct. 326, 328 A.2d 878 (1974). In *Heidorn,* an esthetically objectionable front stoop and overhang, in violation of setback requirements for residential property, were replaced by a far more attractive stoop which remained in violation of the same requirements. The municipality there waited until the new stoop had been installed, several years after the initial time of violation, before objecting. Our Supreme Court held that under the unique circumstances a finding of laches was warranted against the municipality. *Heidorn,* however, differs substantially from the instant case. First, the Supreme Court noted in its opinion that the new stoop "in no way impedes enjoyment by others of their property." *Heidorn, supra* at 574, 195 A.2d at 351. Here, testimony of several neighbors indicates that appellants' operation emits noise, smoke and fumes and may constitute a fire hazard. Further, as this Court observed in *Dewald v. Board of Adjustment,* 13 Pa. Commonwealth Ct. 303, 320 A.2d 922 (1974):

> Also, in Heidorn Appeal, there was no finding, as there is here, that the violation was a threat to the public health, safety, or morals. Indeed, in Heidorn Appeal, not only were there no protestants, indeed 75 neighbors signed a petition asking that the variance be granted. Here,

the neighbors were protesting and testifying at length concerning the adverse effect of the violation.

*Id.* at 208, 320 A.2d at 924.

In *Spice, supra,* the municipality issued a permit for construction of a building intended for commercial uses in apparent violation of the zoning ordinance. The building was openly used for various commercial operations for 36 years before the municipality objected. We held, under the circumstances, that the property owner was entitled to continue commercial use of the property by "vested right." However, Judge KRAMER, speaking for the Court, expressly confined our holding to its specific facts:

> So that this opinion is not misinterpreted, we reiterate that our finding of a vested right in Spica follows from the existence of the 1938 building permit and the circumstances surrounding its issuance, from the extremely long length of time which has passed since the nonconformance began, and from the obvious nature of the nonconformance.

*Id.* at 334, 328 A.2d at 882.

None of the unique factors in *Spica, supra,* is present in the case before us.

Appellants' second argument is that they are entitled to a variance because of an alleged hardship caused by intervening appellee's alleged acquiescence in their operation. They rely upon *Sheedy v. Zoning Board of Adjustment,* 409 Pa. 655, 187 A.2d 907 (1963) where our Supreme Court reversed a denial of a variance for property within a single-family residential zone which had been used as a five-unit dwelling for 23 years before compliance with the ordinance was ordered. Again, we cannot agree. The scope of *Sheedy* was limited severely in *Hasage v. Philadelphia Zoning Board of Adjustment,* 415 Pa. 31, 202 A.2d 461

(1964), in which the Supreme Court observed that *Sheedy* "was a singular situation" based upon at least three factors: the extreme length of the illegal operation; the fact that during that time the zoning hearing board denied a variance for a seven-unit dwelling without any indication that its use as a five-unit dwelling was wrongful; and the fact that the cost of conversion to a single-family dwelling would have been prohibitive. *Id.* at 36, 202 A.2d at 64. Here no similar factors exist.

Appellants next claim error in appellee's failure to consider and grant a temporary variance for their business. Again we cannot sustain their argument. Zoning boards of adjustment are, of course, limited to those powers conferred by statute and local ordinance, and here nothing in the record shows that appellee was empowered to grant such a temporary variance.

The fourth issue which appellants raise is that the denial of their application must be overturned because appellee's solicitor was appointed by intervening appellee's board of commissioners.[2] Appellants claim that such a procedure was violative of due process under the rationale of *Horn v. Township of Hilltown,* 461 Pa. 745, 337 A.2d 858 (1975). There our Supreme Court held that the same solicitor cannot represent both a zoning hearing board and a township opposing an application for a variance, even though no prejudice is shown thereby. We feel that the case before us does not come within the *Horn* prohibition. Unlike the township in *Horn,* intervening appellee here did not oppose appellants' application at any stage of the proceedings, since it participated neither in the hear-

---

[2] The appointment took place shortly after the court below ordered a remand of appellants' appeal in October 1975 with directions that appellee and intervening appellee were to be represented by separate solicitors.

ings before appellee nor the appeals to the court below. Moreover, Section 1203 of The First Class Township Code, Act of June 24, 1931, P.L. 1206, *as amended*, 53 P.S. §56203, does not permit an official body of a first class township to employ a solicitor without the assent or ratification of the township's board of commissioners. As stated by Judge TREDINNICK, speaking for the court below en banc:

Whether the Zoning Hearing Board or the Township initially employs the solicitors, ultimately the authority to hire is vested in the Township. Thus, the Township acted within the parameters of the First Class Township Code.

Appellants' final claim is that neither appellee nor intervening appellee has standing. Again, we must disagree. Nothing in the Pennsylvania Municipalities Planning Code (Code), Act of July 31, 1968, P.L. 805, *as amended*, 53 P.S. §10101 et seq., deprives a zoning hearing board of standing to defend its decision as an appellee before a court of common pleas or subsequently before an appellate court. The question of intervening appellee's standing has already been addressed. On September 17, 1976, President Judge BOWMAN denied appellants' petition to strike the intervention on the basis of Section 1009 of the Code, 53 P.S. §11009.

Accordingly, we will enter the following

ORDER

Now, May 18, 1977, the order of the Montgomery County Court of Common Pleas No. 75-6824, dated May 6, 1976, is hereby affirmed.