William R. Brennan, Jr., J.
This action tried before me without a jury, seeks a declaratory judgment to the effect that professional office use is permissible in a Residence B zone under the Zoning Ordinance of the Village of Hempstead without such use being accessory to a dwelling in which the practitioner resides, or, if not so permitted, that the ordinance is unconstitutional as applied to plaintiffs’ properties as hearing no substantial relationship to public health, safety, morals or welfare. The sufficiency of the complaint has been upheld. (Kurlander v. Incorporated Vil. of Hempstead, N. Y. L. J., Aug. 4, 1960, p. 7, col. 1.)
Plaintiffs, one a physician and the other a dentist, are, with their respective wives, owners of two separate dwellings and premises situated on the south side of Front Street, between Kernochan Avenue and Broadfield Road in a Residence B district in the Village of Hempstead. Each plaintiff practiced his profession from a portion of these premises and utilized the balance as his home for some years prior to July 12, 1955, the date on which the applicable zoning ordinance of the village was adopted. Subsequent thereto both plaintiffs continued to practice their professions at the same locations but moved their families to new dwellings, renting the living quarters of their former homes to tenants.
*122 The first question to be decided is whether, under the proper construction of the ordinance, the plaintiffs had the right to continue their professional practice at these premises which they no longer occupied as residences, or whether such practice was limited under the ordinance to premises actually occupied by them as living quarters.
The ordinance divides the village into 10 districts, 6 of which are Residence districts, 3 of which are Business districts and 1 of which is an Industrial district. Residence AAA is limited to single-family dwellings with 75-foot frontage, Residence AA to single family with 50-foot frontage, Residence A to single family with 40-foot frontage, Residence BB to two-family dwellings with 40-foot frontage, Residence B to multiple dwellings, and Residence 0 to all uses in more restricted districts as well as public or private parking fields. Some of these districts, of course, have additional distinctive attributes which are not relevant to the question presented here. In Residence AAA, AA and A districts, there are permitted accessory uses by professional persons, but these uses are limited in each instance to dwellings “ in which practitioner resides.” In the articles of the ordinance pertaining to Residence BB and B districts no mention is made of accessory uses. General language is employed permitting a building to he used “ for any purpose permitted in a more restricted district.” Such language is sufficiently broad to include all such uses, whether principal or accessory, permitted in any of the “A” districts. Indeed any other construction would authorize more extensive use in the more restricted zones, an obviously unintended result. The absence of any words of limitation, however, raises the question as to whether professional use was to be authorized in these “ B ” districts unfettered by the restrictions imposed in the “A” districts, or whether, on the other hand, the uses were carried over into the “ B ” districts subject to the limitations previously imposed.
Neither possibility would appear to be inconsistent with the over-all purpose of a valid zoning ordinance. Thus, a local legislative body might well differentiate between accessory uses for multiple dwelling districts and single-family residence districts. An accessory use entirely proper for one might be utterly inappropriate for the other. (See Dellwood Dairy Co. v. City of New Rochelle, 7 N Y 2d 374.) There would appear to be no innate inconsistency in permitting professional offices in multiple dwellings without the necessity of requiring the practitioner to reside in the apartment while requiring profes *123 sional residency in a single-family zone. Indeed a far less obvious distinction appeared in the ordinance construed in Town of North Hempstead v. White (1 Misc 2d 228, affd. 1 A D 2d 781). Thus any argument based upon consistency of accessory uses in all six residential districts must fall. There is no logical need for such consistency.
If not for consistency then, why should the court read into the statute the missing words of limitation? We are told by the defendant village that since the Residence B district section of the ordinance permits all uses allowed in more restricted districts, and since the only professional uses allowed in these latter districts are accessory, that we must transplant the language of limitation in toto. Such is not the ease. We hold that the professional use is indeed “ accessory” even in the Residence B district, but only insofar as the term “ accessory ” is defined in the ordinance — not as it is limited in the “ A ” district section. Section 400 (1) defines “Accessory Use,” as ‘ ‘ A use customarily incidental and subordinate to the principal use or building and located on the same lot with such principal use or building.” It says nothing whatsoever about the occupancy of the building as a residence by the accessory user.
There are strong reasons for such a holding. Zoning statutes are in derogation of the common law and must be strictly construed. (Matter of 440 E. 102nd St. Corp. v. Murdock, 285 N. Y. 298; Matter of Glenel Realty Corp. v Worthington, 4 A D 2d 702.) “ Strict construction of a statute, ’ ’ says Judge Francis J. McCaffrey in his book, Statutory Construction (p. 145), ‘ ‘ is that which refuses to expand the law by applications or equitable considerations, but confines its operation to cases which are clearly within the letter of the statute as well as within its spirit or reason; it resolves all reasonable doubts against the applicability of the statute to the particular case.” (Emphasis supplied.) Or as was stated in Transit Comm. v. Long Is. R. R. Co. (253 N. Y. 345, 355): “ Rules of the common law are to be no further abrogated than the clear import of the language used in the statute absolutely requires.”
What the court is really asked to do here, in spite of the mandate for strict construction, is to supply language which was conceivably omitted by the framers of the ordinance through inadvertence. Such omitted language cannot be supplied. As the court stated in McKuskie v. Hendrickson (128 N. Y. 555, 558): “ In construing a statute the legislative intention must be sought in the language used therein contained such helps as the canons of interpretation allow. But new language, or, as in this case, an entirely new provision, cannot be imported into a *124 statute giving it a meaning not otherwise found therein.” (See, also, Matter of Russo v. Valentine, 294 N. Y. 338.)
Moreover, the language we are asked to supply is what is normally referred to as a proviso, and it is a familiar canon of construction that provisos generally are limited to the section immediately antecedent thereto and not extended to cover other sections. (McCaffrey, Statutory Construction, § 58.) Otherwise put, when the Legislature uses different language in the same connection, in different parts of the statute, it is presumed that a different meaning and effect was intended. (Catalanello v. Cudahy Packing Co., 27 N. Y. S. 2d 637; McKinney’s Cons. Laws of N. Y., Book 1, Statutes, § 236.)
Other arguments are advanced by the plaintiff which are based on different sections of the ordinance and the administrative interpretation given to them by the village building department. These arguments are based primarily upon semantics, analogies and abstractions, and though persuasive at first glance, raise equally persuasive arguments in rebuttal. Taken singly or collectively they do little to shed light upon the intention of the local legislative body when it enacted the ordinance concerning the question presented in this lawsuit. The simple fact is that the ordinance of 1955 which is now being construed permits professional use in a Besidence B district and does not require that the practitioner reside in the building so used. The court will not rewrite the ordinance.
Since Special Term should not consider questions of constitutionality unless absolutely necessary, no findings or conclusions are made with respect to the relationship of the 1955 ordinance, or indeed the ordinance as it has been amended subsequent to the institution of this lawsuit, to the public health, safety, morals or welfare.
As a final note, it might be mentioned that the 1960 amendment to the ordinance, which supplied the language of limitation missing in the 1955 ordinance, has not, as in Matter of Chase Manhattan Bank v. Scarborough (9 N Y 2d 875) and Matter of Gordon v. Plonski (9 N Y 2d 886) rendered moot the construction here made. Plaintiffs here, had already rented their premises prior to the amendment of the ordinance and any subsequent restrictions imposed upon the use of their property by the amendment would give them valid nonconforming uses.