## Kernick v. Penn Hills Township

*David McNeil Olds, G. Donald Gerlach* and *Reed, Smith, Shaw & McClay,* for plaintiffs.

*Donald Winson* and *Eckert, Seamans & Cherin* and *Clem M. Strobel,* for defendant.

CLARK, P. J., June 5, 1964.—This court believes that the statement of facts as set out in the brief on behalf of the Township of Penn Hills is very complete and the court adopts the same and it is as follows:

"The parties have stipulated to most if not all of the essential facts involved in this case. The following brief summary of these facts is based on the stipulation and Exhibits thereto and on the plaintiffs' complaint.

"In this proceeding, initiated under section 1502 of the First Class Township Code Act of June 24, 1931, P. L. 1206, art. XV, sec. 1502, cl. I, II, as amended, 53 PS §56502, plaintiffs challenge the legality of ordinance no. 992 of the Township of Penn Hills.

"Prior to August 19, 1963, the zoning regulations for defendant township had been contained in ordinance no. 370 which had been enacted on January 25, 1940, and which had been amended on numerous occasions prior to August 19, 1963. Ordinance no. 370 was a comprehensive zoning ordinance regulating, *inter alia*, the use of land throughout the township (Stip. 3, 4).

"After notice and public hearing in accordance with the requirements of the First Class Township Code, the Commissioners of Penn Hills Township on August 19, 1963, voted five to two in favor of the enactment of a new zoning ordinance, ordinance no. 992 (Stip. 5). On August 21, 1963, ordinance no. 992 was published in 'The Penn Progress', a newspaper of general circulation within the township, in accordance with the First Class Township Code (Stip. 6).

"The title of ordinance no. 992 states that it is an ordinance 'amending, revising and re-enacting the Penn zoning ordinance of 1940 and known as Ordinance No.

370 . . . and all amendments thereto and the zone maps pertaining thereto.' Notwithstanding this statement in the title, the body of ordinance no. 992 sets forth complete and comprehensive zoning regulations for the entire township, including the establishment of zoning districts throughout the township by reference to and incorporation of a zoning map (Stip. Exh. A). The zoning classifications of land throughout the township were extensively changed by ordinance no. 992 and several new zoning classifications were created by the ordinance (Stip. 11).

"On August 19, 1963, the day of the enactment of ordinance no. 992, a petition was presented to the township commissioners opposing the rezoning from 'B' Business, as provided in ordinance no. 370, as amended, to 'R-2' Residential, as would be provided in ordinance no. 992, of the area of land in the township purportedly owned by the persons who signed the petition (Stip. 7). The names of the persons signing this petition, as their signatures appear on the petition, are stated below (Stip. 8; Stip. Exh. B). Set forth below with the name of each petitioner is the manner in which record title was held on August 19, 1963, to any property in Penn Hills Township in which the petitioners, or the spouses of the petitioners, or the petitioners and their spouses, or any corporation wholly owned by a petitioner, had any interest on that date (Stip. 9, 10, 12, 13). The locations of these various properties and the zoning classifications thereof under ordinance no. 370 as amended and under ordinance no. 992 are shown, respectively, on exhibits D and E to the stipulation.

| *"Petitioner* | *Record of Title* |
|---|---|
| Joseph Bonomo, Jr. | Joseph Bonomo, Jr. and Rosaria Bonomo, his Wife, as tenants by the entirety |
| A. Schindler | A. Schindler |

| | |
|---|---|
| Catherine O'Conner | Catherine O'Conner |
| William A. Kernick | William A. Kernick and Phyllis Kernick, his Wife, as tenants by the entirety |
| C. D. Crawford | Crawford Construction Company, a corporation |
| Richard Wilson | Richard Wilson and Eleanor Wilson, his Wife, as tenants by the entirety |
| Margaret Ohorodnik | Margaret Ohorodnik |
| Alfred D. Wright | Alfred D. Wright and Margaret J. Wright, his Wife, as tenants by the entirety |
| Marie E. Schwarzel | Harry Schwarzel |

"Plaintiffs contend that the protest petition 'was signed by the owners of 20 percent or more of the area of lots included in such proposed change of zoning' (complaint 7), and therefore that section 3105 of the First Class Township Code, 53 PS §58105, required the affirmative vote of three-fourths of the commissioners to enact ordinance no. 992 (Stip. 5; complaint 8).

"It is defendant's contention that the protest petition was not signed by the owners of 20 percent or more of the area of lots included in the proposed change of zoning and therefore that ordinance no. 992 was properly enacted by the majority vote of five of the seven commissioners."

We also believe that the questions involved are as set out in this brief on behalf of the Township of Penn Hills and they are as follows:

"There are two well defined questions presented in this case.

"1. What signatures on the protest petition are valid as a legal protest under Section 3105 of the First Class Township Code.

"2. What is the area under Section 3105 of which the petitioners had to own 20 per cent or more in order to require a three-fourths vote of the Township Commissioners for the enactment of all or any portion of Ordinance No. 992."

We believe that all the parties in this case agree that the only question before the court of quarter sessions is the procedural regularity of the enactment of the ordinance and its substantive matters are not before the court.

The first question which is at issue is the validity of the signatures. All parties agree that the signatures of Catherine O'Conner and A. Schindler are valid.

As to the signature of Joseph Bonomo, Jr., this court does not believe that that signature has any effect as of the present time for the reason that the property owned by Joseph Bonomo, Jr., and his wife is not affected by ordinance as finally enacted.

This court also finds that the signature of Marie E. Schwarzel is invalid because she owned no property and there is no evidence that she had any authority to act as an agent and sign for her husband, Harry Schwarzel, and in addition, none of the property owned by Harry Schwarzel is included in the property which faces on Frankstown Road and which this court believes is the property really affected by this zoning ordinance.

The signature of Margaret Ohorodnik has no effect as none of her property was rezoned.

This court is of the opinion that the signatures of William A. Kernick, C. D. Crawford, Richard Wilson and Alfred D. Wright are valid protest signatures.

Certainly the signature of William A. Kernick, plus the fact that his wife, Phyllis T. Kernick, appeared at the meeting when the ordinance was adopted and orally protested the rezoning of their property constitutes a valid protest on the part of the Kernicks.

There is a lower court case, Zimmerman Appeal, 12 D. & C. 2d 11, in which Judge Williams of Lycoming County Court held that where a zoning ordinance requiring a permit to erect a gasoline station needs the signatures of 60 percent of certain property owners, that for the husband alone to sign such consent is not binding upon the wife. In this case, however, Judge Williams states that a release executed by a husband alone for *loss* occasioned to real estate owned by him and his wife by an estate in entireties, is invalid as to the wife, because she cannot be so deprived of her interest.

It is to be noted that in this case the husband was in effect alienating part of the property owned as tenants by the entireties. In the instant case the husband was *protecting* the property owned by the husband and wife as tenants by the entireties and certainly when Mrs. Kernick appeared at the hearing it was quite evident that she agreed with her husband concerning this zoning ordinance.

We hurriedly wish to point out that we do not believe that where one of the owners where property is owned by tenants in common signs a petition, that is a valid signature. Thus it has been held that either spouse has the right to act for both so long as the marriage subsists, in matters of entireties, without any specific authorization, *provided the fruits or proceeds of such action inure to the benefit of both* and the estate is not terminated: Madden v. Gosztonyi S & T Co., 331 Pa. 476, 489 (1938); Williams v. Barbaretta, 359 Pa. 488 (1948).

In at least two Pennsylvania cases it was held that tenants in common must join in a petition seeking affirmative action from a municipality in the form of street improvements which would result in a charge being placed upon the estate by virtue of such improvements: Newton v. Emporium Borough, 225 Pa. 17

(1909); California Borough v. Powell, 50 Pa. Superior Ct. 521 (1912).

In the opinion of this court, however, these cases are readily distinguishable from the present case, for there the act of one tenant would result in the imposition of a charge being placed upon the tenancy in common. Here no charge is being placed upon the estate nor is any affirmative action of the municipality being requested and as we have before pointed out, the nature of a tenancy by the entirety differs substantially from the tenancy in common.

It has been held that the protest provisions of the enabling act must be strictly construed against the municipality and liberally construed in favor of the property owner where the full and free use of his property is threatened by restrictive zoning legislation: Mezel v. Mobley, 21 Ill. 2d 20, 170 N. E. 2d 595 (1960); Bismarck v. Incorporated Village of Bayville, 40 Misc. 2d 1082, 244 N. Y. S. 2d 529 (Sup. Ct. 1963). Thus, it was said in the Bismarck case at 244 N. Y. S. 2d 531:

"Legislation and ordinances affecting the rights of property owners are in derogation of common law and must be strictly construed against the municipality which by its mandates seeks to narrow or limit a property owner's broad common law rights respecting his property (440 East 102nd Street Corporation v. Murdock, 285 N. Y. 298, 34 N. E. 2d 329; Kurlander v. Incorporated Village of Hempstead, 31 Misc. 2d 121, 224 N. Y. S. 2d 461; 1 Rathkopf, Law of Planning and Zoning, 3d ed., ch. 8.) Obviously, the purposes of the statute (Sec. 179) in so far as it relates to the filing of protest, is to provide a means by which the opposition of an owner or owners of property most immediately affected may be made known to the municipal authorities. Consequently, any technical interpretation which would deprive an owner from having her opposition

considered would frustrate rather than promote the aim of the statute."

For the reasons we have thus stated, we believe that the signatures of Richard Wilson and Alfred D. Wright are valid signatures insofar as a protest is concerned even though there is no evidence that the wife consented to their signing the petition. Silence on the part of the wife, in the opinion of this court, means she approved of her husband's signature.

This court also believes that the signature of C. D. Crawford is valid. Here again we must recognize that this is a protest and not the giving away of any of the assets of the corporation.

The authority of the principal executive officer of a corporation to protest on behalf of the corporation has been repeatedly recognized. In Los Angeles Lighting Co. v. Los Angeles, 106 Cal. 156, 161, 39 Pac. 535 (1895), involving a protest signed by a general manager against street improvements, it was said:

"We are of the opinion that under this power the president, as such general manager, had authority to do any act which in his judgment was suitable to protect the interests of the corporation, or to preserve its property, and that the signing of the protest is to be regarded as such an act."

In Chan v. City of South Omaha, 85 Neb. 434, 123 N. W. 464 (1909), it was held that the signature of the corporation by its president who with his wife were the sole shareholders constituted a valid protest on behalf of the corporation even though the board of directors did not specifically authorize the act.

In the present case it is stipulated that C. D. Crawford is an officer and sole shareholder of Crawford Construction Company, the record owner of property within the protest area. It has never been demonstrated that he did not have authority to act on behalf of the corporation. Furthermore, the acquiescence of the cor-

poration in his acts constitutes a ratification of his authority.

As indicated under the previous heading, the purpose of the protest provisions is to inform the township commissioners of opposition to any proposed rezoning. This purpose is amply served where the petition bears the signature of the president and sole shareholder of the corporation, especially where, as here, the commissioners do not inquire into the facts as to the record title. Therefore, the protest of C. D. Crawford on behalf of Crawford Construction Company should be counted as a valid protest.

We now come to a discussion of the second question involved, which is, what is the area under section 3105 of which the petitioners had to own 20 percent or more in order to require a three-fourths vote of the township commissioners for the enactment of all or any portion of ordinance no. 992.

The court in this case viewed the premises and also heard testimony from various people who lived in the premises. It is the opinion of this court that the property owned by the petitioners forms a distinct homogenous neighborhood as distinguished from the property lying between the Old Coal Hollow Road and Coal Hollow Road, and also the property lying to the west of Old Coal Hollow Road. In the case of Rusnak v. Woodbridge Twp., 69 N. J. Super. 309, 174 A. 2d 276 (1961), the court stated (p. 314-315):

"Implicit in the cases found in other jurisdictions is the rule that in computing the protest area the measure is not the land throughout an entire city or township but the area affected by any separable change. Not only must the areas affected be separable, but also the changes wrought by the amendment must not be inseparably related to each other. They must be able to be considered separate sections separately enacted. Property not affected by a separable change should be

excluded from the computation for there would be no reason for such owners to object.

"This rule of construction strikes a balance between the common good and public interest in zoning, and the legitimate private interest of property owners adversely affected by a proposed change. It is a practical rule applicable to varied sets of circumstances and one which prevents the right of protest provided for by the statute from becoming illusory merely by the enactment of a comprehensive amendment."

If the signatures are valid in this case as found by the court in this opinion, owners of 20 percent of the area did sign the protest in so far as the area described in exhibits D and E is concerned. If only the signatures of A. Schindler and Catherine O'Conner are valid, then the owners of 20 percent of the area of the property facing on Frankstown Road did sign a valid protest. Certainly it cannot be contended that it was necessary to have the owners of 20 percent of the land of the entire township sign the protest. To require this effort on the part of any property owners would be a Herculean task and certainly could not be justified. The Pennsylvania Supreme Court has recognized that zoning ordinances are in derogation of common law property rights and must be strictly construed against the impairment of the free use of property: Lord Appeal, 368 Pa. 121 (1951).

To sum up, this court finds that the property owned by plaintiffs in this case constitutes a separate homogenous tract of land. The court also finds that the protest was made by valid signatures in regard to the property owned by A. Schindler, Catherine O'Conner, William A. Kernick and Phyllis Kernick as tenants by the entirety, Crawford Construction Company, Richard Wilson and Eleanor Wilson as tenants by the entirety, Alfred D. Wright and Margaret Wright as tenants by the entirety.

In view of the conclusions of the court we make this order of court:

### Order of Court

And now, June 5, 1964, this court declares ordinance no. 992 invalid and void insofar as it purports to rezone plaintiffs' property from "B" Business to "R-2" Residential for the reason that the ordinance was not adopted by three-fourths of the Commissioners of Penn Township in that said ordinance was adopted by a vote of five to two, and that does not constitute a majority of three-fourths of the commissioners.