Larry J. Rendin and Helen C. Rendin, his wife, *v.* Zoning Hearing Board of The Borough of Media. Borough of Media, Appellant.

Argued January 31, 1985, before Judges CRAIG and COLINS and Senior Judge BLATT, sitting as a panel of three.

*Gail Whitaker*, with her, *Edward S. Lawhorne, Lawhorne, Muller & Del Sordo,* for appellant.

*Stephen J. Polaha*, with him, *Murray S. Eckell,* for appellees.

OPINION BY JUDGE CRAIG, February 28, 1985:

The Borough of Media appeals an order of the Common Pleas Court of Delaware County which reversed the borough zoning hearing board's denial of a variance for property owned by Dr. and Mrs. Larry Rendin. We must determine[1] whether the common pleas court erred in concluding (1) that the owners' continued office space use in part of their property, now zoned R-1 for residence use exclusively, is a lawful nonconforming use; and (2) that the owners have a vested right to continue that use.

Dr. and Mrs. Rendin purchased a large single-family detached house and lot at 700 North Jackson Street, Media, in 1948. At that time, the property was zoned R-1a under a 1938 zoning ordinance. Section 301 of the ordinance then listed the uses permitted in an R-1 district. Subsection 301(7) provided:

Accessory use of the same lot with and customarily incidental to any of the above permitted uses, including a private garage; also professional office or studio for the personal use of a doctor or physician, . . . PROVIDED, that the office . . . is located in the residence or in a building attached thereto. . . .

---

[1] In a zoning appeal, where the common pleas court takes no additional evidence, the Commonwealth Court's scope of review is limited to a determination of whether the zoning board abused its discretion or committed an error of law. *Surrick v. Upper Providence Zoning Hearing Board,* 11 Pa. Commonwealth Ct. 607, 314 A.2d 565 (1974).

Additionally, section 301.1[2] of that ordinance permitted apartment houses in R-1a districts, and section 310[3] permitted business or professional offices in R-1b districts.

From 1948 until 1955, Dr. Rendin used the first floor of his house as offices for his medical practice, and lived with his family on the second floor, apparently a permitted use under section 301(7) of the 1938 ordinance.[4] In 1955, Dr. Rendin moved his family residence out of the house on Jackson Street, and rented out the upper floor as two small apartments. Although Dr. Rendin continued to use the lower floor as his medical offices, that accessory use then contravened the quoted proviso in subsection 301(7), which allowed property in an R-1 district to be used as professional office space only if the practitioner resided in the building. However, the Rendins moved their residence back into the house on Jackson Street in 1967, so that the use once again came into compliance with subsection 301(7).

A subsequent 1967 amendment to the 1938 ordinance expressly deleted sections 301.1 and 310, thereby eliminating the R-1a and R-1b districts. The amendment created a new zoning classification, R-AO, applicable to the Rendin property, to replace the R-1a and R-1b districts, and added Article III(a) which set forth definitions and regulations concerning the new

[2] Section 301.1 reads: "Apartment house in R-1a District when one off-street parking space is furnished for each apartment."

[3] Section 310 reads: "In R-1b districts, in addition to the usages permitted, but subject to the limitations and restrictions herein for R-1 and R-1a Residence Districts, a building may be erected, altered or used, and a lot or premises may be used in its entirety for business and/or professional offices."

[4] As the parties have apparently assumed, uses permitted under section 301, including section 301(7), were also cumulatively permitted in R-1a districts, although section 301.1 does not explicitly so provide, as section 310 does, with respect to R-1b.

R-AO zone. Section 3002 of that article provided: "A building may be erected, altered, or used for an apartment house or office building both as defined in this Article III(a), but for no other purpose or use. . . ." The Rendins' property thus did not comply with the new ordinance because it was not being used for either an apartment house or an office building as those terms were defined in Article III(a):

> Section 3000(a)  *Apartment House* shall mean any apartment house or multi-family dwelling containing (12) or more separate family units.
>
> . . . .
>
> (c)  *Office Building* shall mean and include any building *devoted to office use exclusively* and containing more than twelve hundred square feet at the ground level; and office shall mean and include any type or kind of office use, including professional offices, together with such rooms or facilities as are normally incidental and associated therewith, but not including stores, showrooms, display rooms and like uses. (Emphasis added.)

Although the 1967 amendment did not delete subsection 301(7) under the 1938 ordinance (allowing an accessory professional office), the new section 3002 explicitly restricted the uses in R-AO districts to apartment houses and office buildings, necessarily leaving subsection 301(7) applicable only in R-1 districts, not in R-AO. Therefore, with the enactment of the 1967 ordinance, the Rendins' use of the property, for a residence containing an accessory professional office of the occupant, acquired legal nonconforming use status.

It continued as such through a further amendment in 1973, which rezoned all R-AO districts to R-1, per-

mitting residential use only, with no provision for accessory offices.

In 1974, Dr. Rendin became ill and retired from medical practice. However, he and Mrs. Rendin continued to live on the upper floor of the house on Jackson Street. The doctors with whom Dr. Rendin was previously associated continued to use the offices in Dr. Rendin's house for their medical practices. After those doctors vacated the premises in 1980, Dr. Rendin's two sons used the office space for a detective bureau and a security business, and his son-in-law located his law office in the building.

Those uses are clearly different from use of the property for Dr. Rendin's medical offices, which was allowed under section 301(7) of the 1938 ordinance, and lawful as a continuing nonconforming use under the 1967 and 1973 amendments. However, use of part of the property for businesses and professional offices operated by persons other than the owner-occupant of the property was never allowable under subsection 301(7), nor did it comply with the R-AO limitations, and hence it cannot be a lawful nonconforming use under the current ordinance.

Consequently, the Rendins were required alternatively to establish their entitlement to a variance[5] to continue legally the present use of their property.

---

[5] The applicant for a use variance must prove that:

    1. the ordinance imposes an unnecessary hardship on the property;

    2. the hardship stems from unique physical characteristics of the property;

    3. the variance would not adversely impact on the health, safety and welfare of the general public;

    4. the hardship is not self-inflicted; and

    5. the variance sought is the minimum that will afford relief.

*Solow v. Zoning Hearing Board of Whitehall*, 64 Pa. Commonwealth Ct. 414, 440 A.2d 683 (1982).

They claimed that the property was unmarketable as a single-family home, but offered no evidence, such as the testimony of a real estate appraiser, to substantiate that claim. They further argued that use of the building as offices since 1948 created its uniqueness. However, they offered no evidence that the physical characteristics of the real property, rather than its use, were unique. Therefore, the Rendins did not establish their entitlement to a variance.

The trial court's principal conclusion, that a lawful nonconforming use continued, was based on the erroneous premise that the partial use of property for office purposes by nonoccupants was permissible in the R-AO zone under the 1967 amendment to the ordinance. However, as pointed out above, it was not.

The trial court voiced an alternative theory, basing the variance on a "vested right" analysis under *Knake v. Zoning Hearing Board, Borough of Dormont,* 74 Pa. Commonwealth Ct. 265, 459 A.2d 1331 (1983). However, as the trial court acknowledged in its opinion, mere inactivity by the municipality is insufficient to provide an estoppel basis for allowing continuation of an illegal use. *Dewald v. Board of Adjustment, City of Pittsburgh,* 13 Pa. Commonwealth Ct. 303, 320 A.2d 922 (1974). Moreover, innocent reliance upon the municipal position is required, and no such innocent reliance appears in the history of this case. *Schaefer v. Zoning Board of Adjustment, City of Pittsburgh,* 62 Pa. Commonwealth Ct. 104, 435 A.2d 289 (1981).

Accordingly, we reverse.

ORDER

Now, February 28, 1985, the order of the Court of Common Pleas of Delaware County, at No. 83-13041, Civil Action-Law, dated July 27, 1984, is reversed.

Judge COLINS dissents.

Judge WILLIAMS, JR. did not participate in the decision in this case.