Martin Green and Sylvia Green, his wife, Appellants *v.* The Zoning Board of Adjustment of the City of Pittsburgh, Appellee.

Argued March 11, 1985, before Judges CRAIG, COLINS and PALLADINO, sitting as a panel of three.

*Harlan S. Stone, Stone and Stone,* for appellants.

*Kellen McClendon,* Assistant City Solicitor, with her, *D. R. Pellegrini,* City Solicitor, for appellee.

OPINION BY JUDGE CRAIG, April 3, 1985:

Dr. and Mrs. Martin Green appeal an order of the Court of Common Pleas of Allegheny County which upheld a decision of the City of Pittsburgh Zoning Board of Adjustment granting an occupancy permit for four dwelling units in the landowners' building[1] at 623 North Negley Avenue, but denying a permit

---

[1] The board, in addition to granting an occupancy permit for four units in the main building, also approved one dwelling unit in the carriage house at the rear of the lot.

for a dentist's office on the first floor of that main building. We must determine[2] whether the zoning board correctly concluded that a dental office use of the property lost whatever legitimate status it may have had when Dr. Green moved his residence from the premises in 1953.

Before 1953, Dr. Green and his wife had used part of the building as their residence, and Dr. Green had maintained an office for his dental practice on the first floor. In 1953, the Greens moved their residence elsewhere, but Dr. Green continued to use a portion of the building for his dental practice. The Greens rented the remainder of the building as apartments. That combined use of the building for apartments and Dr. Green's dental office has continued unchanged from 1953 to the present. In 1983, the Greens, in anticipation of placing the property on the market, sought an occupancy permit to confirm that combination of dwelling unit and professional office uses.

Under the Pittsburgh Zoning Ordinance of 1923, the Greens' property had been zoned B residential, which permitted the following uses (in addition to other uses not involved here):

(1) One family dwelling;
(2) Two family dwelling;
(3) Double house;

. . . .

(10) Accessory uses; (the provisions shall be the same as prescribed in ''A'' residence district).

---

[2] In a zoning appeal, where the common pleas court, as here, has taken no additional evidence, Commonwealth Court's review is limited to a determination of whether the zoning board abused its discretion or committed an error of law. *Solow v. Zoning Hearing Board of Borough of Whitehall*, 64 Pa. Commonwealth Ct. 414, 440 A.2d 683 (1982).

The provisions under A residence district of the 1923 ordinance defined "accessory uses" as follows:

Accessory uses incident to any of the principal uses above listed and not involving the conduct of a business. These accessory uses shall be:

(a) Accessory uses customarily incident to the above uses.

Under the 1958 zoning ordinance, the property was zoned R-4, which permits multi-family dwellings, but allows a professional office accessory use only as a special exception and only if the practitioner lives in the same building. Hence, the dental office can be a lawful use under the present (1958) ordinance only as a legal nonconforming use, and it can have that status only if its existence up to 1958 was lawful under the earlier (1923) ordinance.

The pivotal issue therefore is whether, after Dr. Green moved his residence out of the premises in 1953, the dental office continued as an accessory use permitted under the terms of the 1923 ordinance; that is, was the dental office, between 1953 and 1958, "customarily incident" to the principal use, which was then that of a four-unit apartment house, with residential occupants unrelated to the office.

We agree with the board's conclusion that, after the Greens moved their residence out of the property in 1953, the office for Dr. Green's dental practice was not a permitted accessory use under the 1923 ordinance.

Unlike the earlier Pittsburgh zoning ordinance, many zoning ordinances set forth specific types of accessory uses that are permitted. Some ordinances explicitly state that professional offices are permitted, or are permitted only when the practitioner lives in

the building.[3] The landowners argue that, even though the 1923 Pittsburgh ordinance did not contain such specific language, a professional office accessory use was permissible although the practitioner did not reside in the building.

However, in order to establish a right to an accessory use, the landowners must prove that the use sought is secondary to the principal use, and that it is usually found with that principal use. *Food Bag, Inc. v. Mahoning Township Zoning Board of Adjustment,* 51 Pa. Commonwealth Ct. 304, 414 A.2d 421 (1980). The 1923 Pittsburgh zoning ordinance echoes that standard in its definition of ''accessory uses'' as ''customarily incident'' to the permitted uses.

Acknowledging that ''certain general types of real estate usage have a natural tendency to lead to certain other more specific uses,'' *Klavon v. Zoning Hearing Board of Marlborough Township,* 20 Pa. Commonwealth Ct. 22, 27, 340 A.2d 631, 634 (1975), Pennsylvania courts have permitted certain accessory uses under other ordinances which employ the same broad definition of accessory use. *See, e.g., Gross v. Zoning Board of Adjustment, City of Philadelphia,* 424 Pa. 603, 227 A.2d 824 (1967) (restaurant permitted as accessory use to bowling alley); *Novello v. Zoning Board of Adjustment,* 384 Pa. 294, 121 A.2d 91 (1956) (carwash permitted as accessory use to commercial garage and repair shop); *Klein v. Lower Macungie Township,* 39 Pa. Commonwealth Ct. 81, 395 A.2d 609 (1978) (tennis courts permitted as cus-

---

[3] *See Rendin v. Zoning Hearing Board of the Borough of Media,* 88 Pa. Commonwealth Ct. 37, 488 A.2d 391 (1985), where we addressed a similar factual situation under a zoning ordinance which permitted professional offices in a residential district only if the practitioner also resided in the building.

tomarily incident to residential dwellings in that township).

In this case, the landowners urge that the dentist's office was secondary to the principal use. However, unlike the above cases, they have failed to establish that a dental office is customarily incident to an apartment house. Consequently, the landowners' argument meets only one prong of the test, and is therefore insufficient to establish a permitted accessory use. *Food Bag. Accord, Champaine v. Zoning Hearing Board of East Bradford Township,* 30 Pa. Commonwealth Ct. 544, 374 A.2d 752 (1977).

The landowners point to two New York cases, in which the practitioner did not reside in the building where the office was located, to support their argument, *Schwartz v. Chave,* 53 Misc. 2d 1007, 281 N.Y.S. 2d 133 (1967) and *Kurlander v. Incorporated Village of Hempstead,* 31 Misc. 2d 121, 224 N.Y.S. 2d 461 (1961). However, the court in *Schwartz* ordered the granting of a special exception under an ordinance which expressly permitted dental offices in residential districts by way of special exception where the practitioner did *not* reside in the building, unlike the provisions of either the 1923 or the 1958 Pittsburgh ordinances.

In *Kurlander,* the A residence district permitted accessory uses by professional persons, but expressly limited such uses to dwellings in which the practitioner resides. The B residence district, where the applicant's property was located, permitted any uses permitted in more restrictive zones, but made no mention of accessory uses. The court concluded that accessory uses were permitted in B districts, but that the limitations upon such uses in the A districts were not applicable in the B districts, so that the ordinance's general definition of ''accessory use,'' simi-

lar to Pittsburgh's "customarily incident" language, did not restrict professional accessory uses to the practitioner's dwelling. However, that New York trial court failed to follow through in its analysis to determine, as here, whether medical offices are customarily incident to an apartment house.

The landowners alternatively argue under the vested right theory that, because their use of the property as an apartment house and dentist's office has continued uninterrupted since 1953, the city is now estopped from asserting the illegality of that use. However, municipal inaction, without more, cannot support a vested right. *Dewald v. Board of Adjustment, City of Pittsburgh,* 13 Pa. Commonwealth Ct. 303, 320 A.2d 922 (1974). Although one member of the zoning hearing board stated on the record that he knew that the Greens' building housed both an apartment house and a dentist's office before 1958, that is not sufficient evidence to establish a "clear awareness and strong, long-term acquiescence on the part of the municipality." *Draving v. Lower Southampton Township Zoning Hearing Board,* 40 Pa. Commonwealth Ct. 243, 247, 397 A.2d 54, 56 (1979).

*Heidorn Appeal,* 412 Pa. 570, 195 A.2d 349 (1963), and *Township of Haverford v. Spica,* 16 Pa. Commonwealth Ct. 326, 328 A.2d 878 (1974), upon which the landowners rely, are distinguishable. In *Heidorn,* the nonconformity, which consisted of an overhang and stoop in violation of setback requirements, "stuck out like the proverbial sore thumb, and . . . like the stoop it was for the world to see and stumble over." 412 Pa. at 573, 195 A.2d at 351.

In *Spica,* in addition to evidence that the township had acquiesced in a commercial use of a residential property for thirty-six years, there was evidence that the township had issued a building permit for the

property, knowing that the construction was intended to enhance the commercial use of the property. This court emphasized that its finding of a vested right in *Spica* followed from the specific compelling facts of that case, which combined thirty-six years of acquiescence with governmental action sanctioning the nonconformance, and the landowner's good faith reliance on that action. 16 Pa. Commonwealth Ct. at 334, 328 A.2d at 882.

Without equally compelling facts, we cannot conclude that the Greens have established a vested right to the continued use of their property as an apartment house and a dentist's office.

Accordingly, we affirm.

### ORDER

Now, April 3, 1985, the order of the Court of Common Pleas of Allegheny County at S.A. 353 of 1983, dated December 20, 1983, is affirmed.